**WHITAKER CABLE CORPORATION,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 11494.

United States Court of Appeals
Seventh Circuit.

Dec. 14, 1956.

Rehearing Denied Jan. 8, 1957.

Edwin S. D. Butterfield, Chicago, Ill., for petitioner.

Robert B. Dawkins, Asst. Gen. Counsel, James E. Corkey, Atty., Federal Trade Commission, Washington, D. C.,

Earl W. Kintner, Gen. Counsel, Washington, D. C., for respondent.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

Petitioner seeks to set aside a cease and desist order entered by the Federal Trade Commission at the conclusion of proceedings on a complaint charging it with violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13. The complaint, issued on December 20, 1949, charged that petitioner, Whitaker Cable Corporation, had violated and was violating Section 2(a), as amended, by " * * * directly or indirectly discriminating in price between * * * different purchasers of its * * * automotive products and supplies of like grade and quality * * * by selling said products and supplies at higher and less favorable prices to numerous small businessmen purchasers than said products and supplies [were] sold to various larger purchasers generally competitively engaged * * * with said less favored purchasers."

Petitioner is engaged in the manufacture of automotive cable and related parts for the replacement parts market. It sells its products on a nationwide basis to automotive jobbers and to oil and tire companies under the Whitaker brand name and under various private brand names. It is undisputed that petitioner sold its products to such jobbers and oil and tire companies at substantially different net prices. These variations in net price resulted primarily from the application of a rebate schedule based on the total annual volume of purchases made, although certain of petitioner's accounts were charged on the basis of a price schedule reached through private negotiations. Petitioner made no effort to demonstrate any cost justification for its pricing practices, nor did it show that the price discriminations were made in good faith to meet equally low prices of competitors.

Petitioner attacks the order on the grounds that there was insufficient evidence to justify the Commission's finding of probable injury to competition and that it was not accorded a fair hearing.

 Petitioner urges that the finding of probable injury to competition cannot be sustained because: (1) the Commission failed to prove injury in fact; (2) direct testimony by some of petitioner's purchasers that they had not lost sales because of petitioner's pricing policies negated a finding of probable injury; (3) petitioner's pricing policies followed custom and trade practice; and (4) petitioner's sales did not exceed one per cent of the products directly competitive with its own sold in the national market.

The Act, in part, prohibits a seller from discriminating " * * * in price between different purchasers of commodities of like grade and quality * * where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly * * or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *." 15 U.S.C.A. § 13(a). In Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, at page 738, 65 S.Ct. 961, at page 967, 89 L.Ed. 1320, the court stated:

"It is to be observed that § 2(a) does not require a finding that the discriminations in price have in fact had an adverse effect on competition. The statute is designed to reach such discriminations 'in their incipiency,' before the harm to competition is effected. It is enough that they 'may' have the prescribed effect."

See also Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 46, 68 S. Ct. 822, 92 L.Ed. 1196; National Lead Co. v. Federal Trade Commission, 7 Cir., 227 F.2d 825, 835.

This is not to say, however, that the Commission may never lose its case by

failing to introduce evidence of injury in fact. In view of the statutory language of Section 2(a) and the well settled construction thereof that Section 2 (a) does not require a finding that the discriminations in price have in fact had an adverse effect on competition, we take petitioner's contention in this regard as one that, on the facts of this case and particularly in light of the direct testimony by some of petitioner's purchasers that they had not lost sales because of petitioner's pricing policies, the Commission was not justified in disregarding this direct evidence and basing its finding of probable injury on inference. Petitioner finds support for this argument in Commissioner Mason's dissent in this case—the rationale of which is set forth in his dissenting opinion in Matter of Moog Industries, Inc., Docket 5723, affirmed Moog Industries, Inc., v. Federal Trade Commission, 8 Cir., 238 F.2d 43. The rationale of his disagreement with the majority opinion in the Moog case is that if there is no direct evidence on the question of injury, inference may fill the "empty spaces." But the spaces had best be empty of direct facts before inference is permissible.

Without questioning the soundness of this observation, see United States v. United States Gypsum Co., D.C., 67 F. Supp. 397, 450, reversed on other grounds 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, we shall pass to a consideration of the evidence before the Commission.

The record shows price discriminations of considerable magnitude—ranging as high as 30 per cent in net buying price; that petitioner's purchasers sold in a market where competition was keen; that these purchasers operated on small profit margins; that many of the purchasers found it expedient to enter into group buying arrangements for the purpose of aggregating their purchases and thus obtaining higher volume discounts than they would otherwise receive on their individual volume of purchases.

On the basis of these facts the Commission found what would appear to be obvious—that the competitive opportunities of certain purchasers were injured when they had to pay petitioner substantially more for petitioner's products than their competitors had to pay. Further, the inferences drawn by the Commission from these facts are not inconsistent with the evidence adduced by petitioner. The sum and substance of the testimony by petitioner's purchasers was that they had not lost sales as a result of price cutting by their competitors in petitioner's products. Whatever the inherent force of this testimony might otherwise be, it was dissipated by the fact that petitioner's suggested resale prices were maintained for the most part. Nevertheless, it is rather tenuous to argue that because particular purchasers did not lose sales notwithstanding the disparate prices charged by petitioner, there can be no finding of probable injury to competition. Volume of sales does not constitute the only evidence that reflects the health of the competitive scene. See Bruce's Juices v. American Can Co., D. C., 87 F.Supp. 985, 990, affirmed 187 F. 2d 919, modified 5 Cir., 190 F.2d 73, certiorari dismissed 342 U.S. 875, 72 S. Ct. 165, 96 L.Ed. 657. We find no basis for substituting our judgment for that of the Commission.

With regard to petitioner's contention that its pricing policies followed custom and trade practice in an attempt to meet equally low prices of competitors, the evidence adduced by petitioner was at best dubious. In fact, petitioner's president testified that it had always been petitioner's practice to have the highest priced line in the market. And the fact that petitioner adopted and followed the discount system employed by its competitors does not necessarily preclude a finding of Section 2(a) violation. See Federal Trade Commission v. A. E. Staley Mfg. Co., 324 U.S. 746, 753, 65 S.Ct. 971, 89 L.Ed. 1338.

Petitioner next urges that since its sales did not exceed one per cent of the products directly competitive with its own sold in the national market, there can be no finding of a reasonable proba-

bility of injury to competition. Petitioner employed 350 personnel in its facilities and its annual sales volume for the year 1949 approximated $2,000,000.00. At the time of the hearing 40 to 50 per cent of the replacement parts market was occupied by the major car manufacturers, but petitioner sold 8½ per cent of the 14,000 jobbers operating in this market.

The Commission answered petitioner on this point as follows:

"This argument loses sight of the fact that competitive injury between [petitioner] and its competitors is not at issue in this proceeding and [petitioner's] relative position in the industry is not controlling to a determination that its pricing practices may not have had the effect ascribed to them by the hearing examiner [*i.e.*, the injury to 'second line competition']."

The Commission did not concede that Whitaker was insignificant in the automotive replacement parts market. There is adequate evidence in the record to sustain the Commission's finding that petitioner was a major manufacturer in the replacement parts industry and that the amount of business done by petitioner was substantial. Petitioner's contention in this regard is lacking in merit.

However, the Commission, not satisfied with having proved its case, goes on to say in its appeal brief that:

" * * * we wish to emphasize that Whitaker's standing among such manufacturers is not a material factor in connection with injury to customer competition." Brief for Respondent at p. 21.

Petitioner's relative position in the industry standing alone is, of course, of no particular significance, but in so far as it reflects relative size, this is a material factor which the Commission should consider. Congress has not outlawed price differentials *per se*, unjustified though they may be. The Act was not intended to reach every remote, adverse effect on competition. The effect must be substantial. See Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 357, 42 S.Ct. 360, 66 L.Ed. 653; Standard Oil Co. of Cal. & Standard Stations v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371; Minneapolis-Honeywell Regulator Co. v. Federal Trade Commission, 7 Cir., 191 F.2d 786, at page 790, certiorari dismissed 344 U.S. 206, 73 S.Ct. 245, 97 L.Ed. 245, "And we construe the Act to require substantial, not trivial or sporadic, interference with competition to establish violation of its mandate." If the discrimination complained of does not, cannot and will not have the defined effect of injury to or substantial lessening of competition, or tendency to create a monopoly, the Act has not been violated and the Commission is without authority to prohibit such discrimination. Anchor Serum Co. v. Federal Trade Commission, 7 Cir., 217 F.2d 867. This is implicit in the very language employed by the Act. Any other construction would turn the Act into a price control law contrary to its manifest purpose. We do not mean to suggest that the Act may be violated a little without fear of its sanctions but rather that insignificant "violations" are not, in fact or in law, violations as defined by the Act. If the amount of the discrimination is inconsequential or if the size of the discriminator is such that it strains credulity to find the requisite adverse effect on competition, the Commission is powerless under the Act to prohibit such discriminations whether first line or second line competition be involved.

■ Finally, petitioner complains that the hearing examiner in this proceeding also held a hearing in a factually related matter in which petitioner did not participate. That proceeding involved eight automotive parts jobbers charged with knowingly inducing and receiving discriminatory prices by means of a group buying arrangement in violation of Section 2(f) of the Clayton Act, as amended. Petitioner was not a party to that proceeding and the issues were not the same as those involved in the in-

stant case. Any order that might have issued in that proceeding could not have affected or prejudiced petitioner. We fail to see in what manner petitioner was prejudiced and petitioner does not indicate in what way it was prejudiced other than its assertion that such conduct by the hearing examiner violated "concepts of basic fairness." But see Dolcin Corp. v. Federal Trade Commission, 94 U.S. App.D.C. 247, 219 F.2d 742, 745–46, certiorari denied 348 U.S. 981, 75 S.Ct. 571, 99 L.Ed. 763; cf. Federal Trade Commission v. Cement Institute, 333 U.S. 683, 700–703, 68 S.Ct. 793, 92 L.Ed. 1010.

We have considered the other issues raised by petitioner and find them to be equally untenable.

The order is

Affirmed.