**E. EDELMANN & COMPANY,
Petitioner,**

v.

**FEDERAL TRADE COMMISSION,
Respondent.**

**No. 11500.**

United States Court of Appeals
Seventh Circuit.

Dec. 14, 1956.

Rehearing Denied Jan. 16, 1957.

W. M. Van Sciver, Bair, Freeman & Molinare, Chicago, Ill., for petitioner. Will Freeman, Norman Lettvin, Chicago, Ill., of counsel, for petitioner.

Robert B. Dawkins, Asst. Gen. Counsel, James E. Corkey, Atty., Earl W. Kintner, Gen. Counsel, Janet D. Saxon, Atty., Federal Trade Commission, Washington, D. C., for respondent.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

Petitioner seeks to set aside a cease and desist order entered by the Federal Trade Commission on a complaint charging it with violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13.

The complaint charged that petitioner, E. Edelmann & Company, directly or indirectly discriminated in price between the different purchasers of its automo-tive products and supplies by selling said products and supplies at higher and less favorable prices to numerous small businessmen purchasers than said products and supplies were sold to various larger purchasers generally competitively engaged with said less favored purchasers.

Petitioner is engaged in the manufacture of automotive products and supplies which it sells on a nationwide basis to automotive jobbers, oil and tire companies and industrial users. These products, which petitioner classifies into so-called "lines," i. e., a brass line, a glass line and a brake line, are sold under petitioner's brand name and under various private brand names. The prices charged industrial accounts were not involved in this proceeding, and the hearing examiner dismissed from consideration the prices charged private brand accounts. In 1949 petitioner's total sales volume approximated $1,600,000.00, of which the brass line accounted for 45%; the glass line, 53%; and the brake line, 2%.

Petitioner sells its products to some 3,500 to 4,000 purchasers, of which approximately 40 are classified as warehouse distributors, 15 to 20 as private brand accounts, 6 as cooperative buying groups, 50 as industrial accounts, and the remainder as automotive jobbers who either buy from petitioner's warehouse distributors or from petitioner directly. The respondent does not complain of the warehouse distributor's discount on the products resold to automotive jobbers. The price differentials which were found to be unlawful discriminations resulted from the application of a 20% discount from a distributor's net price on purchases of petitioner's brass line and 15% on the glass and brake lines. These discounts were accorded to the 40 warehouse distributors and the six cooperative buying groups who purchased 28% of petitioner's sales volume. Other price differentials which were found unlawful related to a quantity discount schedule which provided a maximum discount of 15% off "list" on single orders for brass fittings totalling $25,000.00,

and 15% on single orders totalling $15,-000.00 for assorted flexible lines.

Petitioner made no effort to demonstrate any cost justification for its pricing practices, although it did attempt to show that the discriminatory prices were made in good faith to meet equally low prices of competitors. The Commission found that there was a reasonable probability that petitioner's pricing practices substantially adversely affected competition at the secondary level and accordingly entered its order to cease and desist.

Petitioner attacks the order on the grounds that there is insufficient evidence to support the Commission's finding of probable injury to competition; that the Commission erred in finding that petitioner failed to establish that its discriminatory prices were made in good faith to meet an equally low price of a competitor; and that the order of the Commission is too broad and in excess of its authority.

■ Section 2(a) of the Clayton Act, as amended, does not require a finding that the price discriminations have in fact had an adverse effect on competition. It is enough that they may have the prescribed effect. Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 46, 68 S.Ct. 822, 92 L.Ed. 1196; Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, 738, 65 S.Ct. 961, 89 L.Ed. 1320; National Lead Co. v. Federal Trade Commission, 7 Cir., 227 F.2d 825, 835. This is too well settled to admit of serious doubt. The test of injury to competition has been formulated in various ways. In the Corn Products case, 324 U.S. at page 738, 65 S.Ct. at page 967, the Court stated, "The use of the word 'may' was not to prohibit discriminations having 'the mere possibility' of those consequences, but to reach those which would probably have the defined effect on competition." Later in the opinion, however, 324 U.S. at page 742, 65 S.Ct. at page 969, the Court stated, "As we have said, the statute does not require that the discriminations must in fact have harmed competition, but only that there is a reasonable possibility that

they 'may' have such an effect." This latter formulation was adopted in the Morton Salt case, 334 U.S. at page 46, 68 S.Ct. at page 828, with the qualification that, "This language is to be read also in light of the following statement in the same case [Corn Products case, 324 U.S. at page 738, 65 S.Ct. at page 967], discussing the meaning of § 2(a), as contained in the Robinson-Patman Act, in relation to § 3 of the Clayton Act * *." 334 U.S. at page 46, note 14, 68 S.Ct. at page 828. Justice Jackson, however, preferred an outright adoption of "reasonable probability" as the test applicable to the determination of the presence or absence of the defined effect on competition as opposed to a "reasonable possibility" standard. 334 U.S. at pages 55–58, 68 S.Ct. at pages 832, 834. Nevertheless, the Commission found that it was "reasonably probable" as well as "reasonably possible" that petitioner's price discriminations had the defined effect on competition at the secondary level.

■ If there is substantial evidence to support the finding of the Commission the order must be affirmed, 5 U.S.C.A. § 1009(e) (B) (5); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456, and substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126.

We therefore turn to the record which shows substantial discriminations in price; that the purchasers of petitioner's products sold in a market where competition was keen; that these purchasers operated on small profit margins; that many of the purchasers found it expedient to enter into group buying arrangements for the purpose of aggregating their purchases and thereby obtaining higher discounts than they would otherwise receive as ordinary jobbers in contrast to the warehouse distributor.

■ Notwithstanding these facts, petitioner urges that there is no proof of

injury or probable injury to competition, only inferences that are unsupported by reason. We must disagree. On the basis of the above facts the Commission found what appears reasonable and obvious: that the competitive opportunities of the less favored purchasers were injured when they had to pay substantially more for petitioner's products than their competitors had to pay. Petitioner further urges that the price discriminations and the profits derived therefrom by the favored purchasers were small or inconsequential and can only have negligible effects upon competition. Although it has been held that there is no automatic *de minimis* exception in Section 2(a) which requires the Commission to insert a maximum permissible discrimination in its order. Ruberoid Co. v. Federal Trade Commission, 2 Cir., 189 F.2d 893, modified 2 Cir., 191 F.2d 294, affirmed but enforcement denied 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081, it is implicit in the Act that discriminations which are negligible and which at best have a remote effect on competition are not within its prohibitions. See our opinion in Whitaker Cable Co. v. Federal Trade Commission, 7 Cir., 239 F.2d 253. But it must be remembered that in enacting the Robinson-Patman Act, 49 Stat. 1528 (1936), 15 U.S.C.A. § 13, Congress undertook to strengthen this phase of the Clayton Act which it thought had been too restrictive in practice by directing emphasis to individual competitive situations rather than competition in general. See Sen.Rep.No.1,502, 74th Cong.2d Sess. (1936); H.R.Rep.No.2,287, 74th Cong.2d Sess. (1936); Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 48–50, 68 S.Ct. 822, 92 L.Ed. 1196.

There was evidence tending to show that differentials of small amounts were important in the trade and the existence of the so-called cooperative buying groups bears this out. These and other findings justified the Commission in concluding that the profit differences which resulted from petitioner's pricing practices were not insignificant or infinitesimal. Petitioner would have us disregard the implications that arise from the existence and function of the buying groups because it is not appealing the point that they did not perform a true warehouse function and that petitioner has quit selling to such groups. However, petitioner did sell to such groups and we are justified in drawing inferences from this fact as did the Commission with reference to effect on competition of petitioner's pricing practices, notwithstanding the fact that in another context a question of mootness might arise concerning these buying groups.

■ Certain of petitioner's jobbers testified that they knew that the warehouse distributor bought at a lower price than they did and stated that they did not care; that warehouse distributor competition with them had not injured them in any way; and that they knew of no lessening of competition nor of any corralling of business by one or a few of their competitors. In view of the competitive condition of the market as reflected by the record, the small profit margins on which the participants in this market operated and the size of the discriminations, we believe that the Commission was justified in disregarding this testimony. In addition, petitioner suggested resale prices at all levels of distribution and it was found that these suggested prices were regularly adhered to. This explains, at least in part, why the warehouse distributors did not "corral" the market by taking advantage of the discounts accorded them by cutting prices. It is not necessary that a price advantage be used to lower the resale price and thereby attract business away from the nonfavored competitors. Sales are not the sole indicium that reflects the health of the competitive scene. See Moog Industries, Inc., v. Federal Trade Commission, 8 Cir., 238 F.2d 43; Bruce's Juices v. American Can Co., D.C., 87 F. Supp. 985, 990, affirmed 5 Cir., 187 F.2d 919, modified 5 Cir., 190 F.2d 73, certiorari dismissed 342 U.S. 875, 72 S.Ct. 165, 96 L.Ed. 657.

■ Petitioner urges that since the pricing practices which it follows are

traditional in its industry, petitioner is justified in meeting the equally low prices of its competitors and that this is a complete defense under Section 2(b), 15 U.S.C.A. § 13(b). The record shows, however, and the Commission so found, that petitioner did not meet the different prices of its two principal competitors nor those of any other competitors, and that the discount system employed by petitioner was not the same as that of its two principal competitors. Section 2 (b) places the burden upon the price discriminator to establish that its lower price was made in good faith to meet an equally low price of a competitor. Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196; Federal Trade Commission v. A. E. Staley Mfg. Co., 324 U.S. 746, 65 S. Ct. 971, 89 L.Ed. 1338. The record amply demonstrates that petitioner failed to discharge this burden.

■ Finally, petitioner insists that the order to cease and desist is too broad in scope and exceeds the authority of the Commission because its provisions are not limited to instances of price discrimination in the sale of the specific types of automotive products of like grade and quality to different purchasers competing in the resale of such specific types of automotive products.

The Commission ordered that petitioner:

"* * * in or in connection with the sale of automotive products in commerce, as 'commerce' is defined in the Clayton Act as amended, do forthwith cease and desist from discriminating, directly or indirectly, in the price of said automotive products of like grade and quality, by selling to any direct or indirect purchaser at net prices higher than the net prices charged any other purchaser, direct or indirect, competing in fact in the resale and distribution of said products."

■ This order is substantially identical to the one approved by the Supreme Court in Federal Trade Commission v. Ruberoid Co., 343 U.S. 470, 72 S.Ct. 800,

96 L.Ed. 1081; see also Moog Industries, Inc. v. Federal Trade Commission, 8 Cir., 238 F.2d 43. Petitioner's objections are not well founded. The order encompasses only the specific means by which petitioner has discriminated in the past and is broad enough to prohibit variances which would accomplish the same result. The Commission is not required to confine its order to the narrow area transgressed by petitioner, it must be permitted sufficient leeway so that its order may not be reduced to a nullity by technical, but not actual, compliance. See Federal Trade Commission v. Ruberoid Co., 343 U.S. at page 473, 72 S.Ct. at page 803.

We have considered the other issues raised by petitioner and have found them to be without merit.

The order is

Affirmed.