MUELLER CO., Petitioner,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 13674.

United States Court of Appeals Seventh Circuit.

Sept. 6, 1963.

As Modified on Denial of Rehearing Oct. 21, 1963.

Rehearing Denied Oct. 21, 1963, en banc.

Swygert, Circuit Judge, dissented.

Swygert, Circuit Judge, voted to grant the rehearing; Schnackenberg and Swygert, Circuit Judges, voted to grant the rehearing en banc.

A. G. Webber, III, Decatur, Ill., John T. Loughlin, Chicago, Ill., Thomas R.

McMillen, William F. Upshaw, Chicago, Ill., Webber, Webber & Welsh, Decatur, Ill., Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., of counsel, for petitioner.

J. B. Truly, Asst. Gen. Counsel, Thomas F. Howder, Attorney, James McI. Henderson, General Counsel, Alvin L. Berman, Attorney, Federal Trade Commission, Washington, D. C., for respondent.

Before KNOCH, KILEY, and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This is a petition pursuant to 15 U.S.C. § 21 to review a cease and desist order of the Federal Trade Commission for violation of § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a).[1]

Petitioner manufactures and sells, in interstate commerce, valves, fittings, and other equipment parts and accessories used especially in public and privately owned water and gas distribution systems. It has plants in Illinois, California and Tennessee. In 1957, its gross sales exceeded $25,000,000, with 40% in gas products and 60% in waterworks products. It sells directly, or through jobbers, to end users of its products. Virtually all of its gas system products and about half of its waterworks products are sold directly to ultimate users. The remainder of the waterworks system products petitioner sells to two classes of jobbers throughout the United States, respectively called "limit" or "stocking" jobbers, and "regular" jobbers. Both classes of jobbers receive a 15% discount on all orders for direct or "drop shipments" to end users. But petitioner gives a 25% discount to stocking jobbers on petitioner's products which they warehouse.[2]

The Commission's complaint charges that the 10% discount differential was unlawful price discrimination. The Hearing Examiner ordered the complaint dismissed. The Commission on appeal vacated the Examiner's order and entered the order at bar. This proceeding followed.

The Commission found, among other things, that the discount to stocking jobbers competing with regular jobbers was discrimination in prices, the effect of which "may be substantially to injure, destroy or prevent competition;" that petitioner had failed to establish either that the discount to stocking jobbers was granted for the purpose of meeting in good faith low prices of competitors or that the greater discount to stocking jobbers was "cost justified." In its opinion the Commission also found that petitioner discriminated in the selection of stocking jobbers.

At the outset, we see no merit in petitioner's contention that the Commission "aribitrarily" overturned the findings of the Hearing Examiner and that the findings of the Hearing Examiner are supported by a "preponderance of the record evidence." The only question for us on the evidence is whether there is a substantial evidentiary basis for the findings of the Commission.

Petitioner contends the Commission produced no evidentiary basis for its

---

1. Section 2(a) of the Clayton Act, 15 U.S.C. § 13(a) provides, in pertinent part, as follows:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially, to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimnation, or with customers of either of them * * *."

2. Smaller and commonly used parts, often to meet emergencies.

finding that there was competitive injury. We point out that the Commission's finding is that the effect of the discrimination *may be* to injure.

There is evidence that the profit margin for a wholesaler in the business is "very, very low" and an additional 10% margin "extremely important;" that a retailer seeing one competitor's lower price on one item will think "you are out of line" on other items and this has a harmful effect on the regular jobbers; that a regular jobber changed to a different seller to get a discount equalling the competition of stocking jobbers; and that some of petitioner's jobbers wrote complaining of the discount to stocking jobbers. Moreover, there is apparent from the difference in discounts themselves a "reasonable possibility" that the regular jobbers would be adversely affected by petitioner's discounting practice.

█ We think there is a substantial evidentiary basis to support the finding that the effect of discrimination in discounts *"may be* substantially to injure competition." That is a sufficient finding. Federal Trade Comm. v. Morton Salt Co., 334 U.S. 37, 46, 50, 68 S.Ct. 822, 828, 830, 92 L.Ed. 1196 (1948),[3] E. Edelmann & Company v. Federal Trade Comm., 239 F.2d 152, 154 (7th Cir. 1957), cert. denied, 355 U.S. 941, 78 S.Ct. 426, 2 L.Ed.2d 422 (1958).

We turn now to the finding that petitioner failed to establish the § 2(d) [4] "de-

fense" interposed to the § 2(a) complaint. The Hearing Examiner found in effect that the "stocking jobber" status was available to regular jobbers. Before the Commission, in support of that finding, petitioner argued that regular jobbers were free to enter the stocking jobber status and that therefore the practice conformed to § 2(d) of the Act. The Commission found to the contrary and petitioner challenges the finding in this court.

There were no objective standards to guide regular jobbers in qualifying as acceptable and there is substantial evidence to support the Commission's finding as well as evidence that petitioner's decisions on this point were influenced by whether it had already adequate distribution "in that particular area" and by its concern to protect "old established jobbers." Theoretically, these discounts were available to all, but functionally they were not. Federal Trade Comm. v. Morton Salt Co., 334 U.S. 37, 42, 68 S.Ct. 822, 92 L.Ed. 1196 (1948).

█ Because we think the Commission's finding is based on substantial evidence, it follows that it was warranted in concluding that § 2(a) was violated by price discrimination in that the "functional discount" was not available to all other jobbers or customers of petitioner as required by § 2(d). Petitioner's position before the Commission and here was that to prove unlawful discrimination under § 2(a) the General Counsel was

---

3. "It would greatly handicap effective enforcement of the Act to require testimony to show that which we believe to be self-evident, namely, that there is a 'reasonable possibility' that competition may be adversely affected by a practice under which manufacturers and producers sell their goods to some customers substantially cheaper than they sell like goods to the competitors of these customers." Federal Trade Comm. v. Morton Salt Co., 334 U.S. 37, 50, 68 S.Ct. 822, 830, 92 L.Ed. 1196 (1948).

4. § 2(d) of the Act, 15 U.S.C. § 13(d), provides as follows:
"It shall be unlawful for any person engaged in commerce to pay or contract

for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, *unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.*" (Emphasis added.)

required to prove *unavailability* of the higher discount to the regular jobbers, and before the Examiner petitioner introduced evidence of availability in an attempt to establish a § 2(d) defense.

■ Petitioner alleged, in these proceedings, and had the burden of proving, the defense set forth in § 2(a) of the Act: " * * * nothing herein contained shall prevent differentials [in price] which make only due allowance for differences in the cost of manufacture, sale, or delivery * * *." The Commission found that petitioner failed to establish that defense of "cost justification." We think there is substantial evidence in the record as a whole to support that finding.

The discount is allegedly given to cover the cost of maintaining an inventory of petitioner's products. But the record contains "a large number" of invoices showing that stocking jobbers received the added discount on goods which they purchased after having received orders from their own customers. On those "tagged" orders, there is no showing that the stocking jobbers did any more than regular jobbers, who received a discount of only 15%. Petitioner's brief in this court argues that the cost on those orders "may actually be greater because of the special handling involved." The mere possibility of greater cost is not sufficient.

■ The evidentiary basis of the Commission's findings and conclusions is limited to sales of petitioner's waterworks products. For this reason petitioner contends the Commission's order [5] is too broad in including its gas products. If the Commission's conclusion that petitioner violated § 2(a) in distributing its waterworks products is right, it is not unreasonable for the Commission to frame its order to prohibit petitioner's

use of the illegal practice "in conjunction with the sale of any and all products." Niresk Industries, Inc. v. Federal Trade Comm., 278 F.2d 337 (7th Cir., 1960), cert. denied, 364 U.S. 883, 81 S.Ct. 173, 5 L.Ed.2d 104 (1960). We think the evidence as to the unlawful discount justified the order to cease and desist from using the discount device on any of its products. Federal Trade Comm. v. Morton Salt Co., 334 U.S. 50, 52, 68 S.Ct. 822, 92 L.Ed. 1196 (1948), E. Edelmann & Company v. Federal Trade Comm., 239 F.2d 152, 156 (7th Cir., 1957).

Petitioner argues that the Commission's order will disrupt its distribution system and prevent it and others from providing price discounts to stocking jobbers in payment for valuable warehousing functions. The Commission's order is based on findings: that the amount of discount was not cost justified; that stocking jobbers have received stocking discounts where no warehousing function was provided; and that stocking jobber status was not available to all on objective standards. The Commission's order, although written in broad terms, is based on and is limited by those findings of fact. The Commission order cannot do away with statutory defenses provided by the Robinson-Patman Act. The Commission, in its brief, referring to the practice of compensating jobbers who perform a warehousing function, states: " * * * this is a perfectly proper procedure, provided it be done in a fair and legal manner." We approve the order on that basis.

For the reasons given, we hold the findings of the Commission are supported by substantial evidence in the record; that the Commission did not err in its conclusion of law that petitioner's conduct violated § 2(a) of the Clayton Act

5. The Commission order reads, in pertinent part, as follows:
    "It is Ordered that respondent * * * cease and desist from: Discriminating, directly or indirectly, in the price of such products of like grade and quality, by sell-
ing to any purchaser at net prices higher than the net prices charged any other purchaser competing in fact with such unfavored purchaser in the resale and distribution of such products."

as amended; and that the order is valid. We have considered the other points argued, but need not discuss them.

The petition is denied. The order is affirmed.

SWYGERT, Circuit Judge (dissenting).

The hearing examiner found that the additional ten per cent discount granted stocking (limit) jobbers compensates them for maintaining an inventory of Mueller items which are needed by users most frequently, often to meet emergencies; and that this differential in price is no greater than is necessary to reimburse these jobbers for performing a warehousing function. In other words, he found that the price difference is a functional discount representing a reasonable payment for services and facilities actually performed.

While the Commission disputed some of the examiner's findings on these issues, it is my opinion that the Commission failed entirely in its obligation to clearly show, by citation to the record or otherwise, that the examiner's findings were in error. See Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 494, 71 S.Ct. 456, 95 L.Ed. 456 (1951). A reading of the record convinces me that the Commission would have experienced great difficulty in so showing.

The important question, however, is legal rather than factual. This is because the Commission, assuming that the examiner may have been correct on the facts, concludes as a matter of law that Section 2(a) of the Robinson-Patman Act has been violated.

In finding a violation, the Commission rejected the view it espoused in Doubleday & Co., 52 F. T. C. 169 (1955):

"In our view, to relate functional discounts solely to the purchaser's method of resale without recognition of his buying function thwarts competition and efficiency in marketing, and inevitably leads to higher consumer prices. It is possible, for example, for a seller to shift to customers a number of distributional functions which the seller himself ordinarily performs. Such functions should, in our opinion, be recognized and reimbursed. Where a businessman performs various wholesale functions, such as providing storage, traveling salesmen and distribution of catalogues, the law should not forbid his supplier from compensating him for such services. Such a legal disqualification might compel him to render these functions free of charge. The value of the service would then be pocketed by the seller who did not earn it. Such a rule, incorrectly, we think, proclaims as a matter of law that the integrated wholesaler cannot possibly perform the wholesaling function; it forbids the matter to be put to proof.

"On the other hand, the Commission should tolerate no subterfuge. Only to the extent that a buyer actually performs certain functions, assuming all the risks and costs involved, should he qualify for a compensating discount. The amount of the discount should be reasonably related to the expenses assumed by the buyer. It should not exceed the cost of that part of the function he actually performs on that part of the goods for which he performs it." (at 209.)

The Commission, I believe, should have adhered to that view rather than to have repudiated it.

According to the Commission's present view, legal recognition cannot be given to the fact that a customer integrates a warehousing function with his selling function and is compensated for so doing by a lower purchase price. The Commission maintains that only the selling characteristics of the customer, i. e., whether wholesaler or retailer, should be considered when setting prices.

This view is contrary to that expressed in Doubleday wherein it was recognized that a purchaser from a producer may perform dual distribution functions

which may entitle him to be classified, economically and legally, in a category of buyers different from that which perform only a single function.

Labels should yield to realities. When a buyer performs a distribution function which similar buyers do not perform, he should be allowed to receive reasonable and commensurate compensation for the additional function. In my opinion, the reasons stated in the Report of the Attorney General's National Committee to Study the Antitrust Laws, 207 (1955), for allowing so-called functional discounts are persuasive and ought be adopted in deciding this case. That Report reads in pertinent part:

"[T]o relate discounts or prices solely to the purchaser's resale activities without recognition of his buying functions thwarts competition and efficiency in marketing. It compels affirmative discrimination *against* a substantial class of distributors, and hence serves as a penalty on integration. If a businessman actually fulfills the wholesale function by relieving his suppliers of risk, storage, transportation, administration, etc., his performance, his capital investment, and the saving to his suppliers, are unaffected by whether he also performs the retailing function, or any number of other functions. A legal rule disqualifying him from discounts recognizing wholesaling functions actually performed compels him to render these functions free of charge. The value of the service

is pocketed by the seller who did not earn it. Such a rule proclaims as a matter of law that the integrated wholesaler-retailer cannot possibly perform the wholesaling function; it forbids the matter to be put to proof."

The General Counsel argues that the Commission recognized that the "limit" jobbers perform warehousing and stocking services which the "regular" jobbers do not perform. It is said for the Commission, however, that if Mueller is to compensate the limit jobbers for these services, it "must follow the terms and conditions specified in Section 2(d)." [1]

The answer to this argument is that a violation of Section 2(d) is not charged. The Commission apparently recognized from the start that this is not a true Section 2(d) situation and that arguably there may be justification for a difference in discounts between the limit and the regular jobbers. Its election to prosecute a Section 2(a) charge precludes the maintenance of a Section 2(d) charge and conviction which the Commission and its counsel have added (or substituted) by way of hypothesis.

This is an added reason why I am unable to join in the majority opinion which reads into the order (but without directing its modification) the Section 2(d) proviso.

I am aware that the Robinson-Patman Act does not expressly recognize that certain buyers in a class may be additionally compensated for performing extra distribution functions which nor-

[1]. The General Counsel's brief reads in part:

"Petitioner's sole response to the Commission's finding that the price discriminations 'subsidize' the 'limit' jobbers' warehousing of certain products, and so give them a competitive advantage, is that '[i]t is ludicrous to suggest that an independent wholesaler will assume the extra burden and cost' of warehousing petitioner's products 'without extra compensation.' * * * This, however, is not what the Commission is insisting upon. The Commission concedes that this is a perfectly proper procedure, pro-

vided it be done in a fair and legal manner. In this connection, the Commission observes * * *, in the words of its General Foods decision, that:

" 'The law permits the seller to pay for services or facilities furnished in the resale of goods. If he elects to do so, however, the payments must be in accordance with the terms and conditions laid down in Section 2(d). To hold that the rendering of special services ipso facto gives him a separate functional classification would be to read Section 2(d) out of the Act.' " [52 F.T.C. at 825.] (at 53).

50

mally would be performed by the seller. But neither does it prevent such compensation through a discount in purchasing price which discount reflects a reasonable relationship to the services performed and the facilities furnished the seller, absent any hint of subterfuge. Doubleday, supra. It seems to me that a realistic approach to the marketing situation presented in this case justifies an interpretation of the Act so as to allow jobbers reasonable compensation, by way of an added discount, for performing a distribution function with which Mueller had heretofore been burdened.

I would set aside the Commission's order.