**KRIST OIL CO., INC., Plaintiff,**

v.

**BERNICK'S PEPSI–COLA OF DULUTH, INC., Defendant.**

No. 04–C–187–C.

United States District Court, W.D. Wisconsin.

Jan. 20, 2005.

Donn Atanasoff, for Plaintiff.

Quentin R. Wittrock, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

Plaintiff Krist Oil Co., Inc. is suing defendant Bernick's Pepsi–Cola of Duluth, Inc. for monetary, declaratory and injunctive relief for three alleged wrongs: (1) implementing a pricing scheme in violation of Wis. Stat. § 133.04, Wis. Admin. Code § ATCP 102.12 and the Robinson–Patman Act, 15 U.S.C.A. § 13; (2) wrongfully terminating plaintiff's dealership in violation of the Wisconsin Fair Dealership Act; and

(3)failing to reimburse plaintiff for its promotional giveaways in violation of Wis. Admin. Code § ATCP 131.02. This case is now before the court on defendant's motion to dismiss for failure to state a claim on which relief can be granted, Fed. R.Civ.P. 12(b)(6). Defendant's motion will be granted in part and denied in part. Jurisdiction is present. 28 U.S.C. § 1332.

For the sole purpose of deciding the present motion, I accept as true plaintiff's allegations in its second amended complaint.

## ALLEGATIONS OF FACT

Plaintiff Krist Oil Co., Inc. is a Michigan corporation with its principal place of business in Iron River, Michigan. It owns and operates 66 gasoline and convenience stores in Michigan's upper peninsula, northern Wisconsin and Minnesota. Plaintiff has two stores in Superior, Wisconsin: one that opened in November 1999, and the other in September 2000. Bernick's Pepsi–Cola of Duluth, Inc. is a Minnesota corporation with its principal place of business in Waite Park, Minnesota. Defendant has been the exclusive wholesale distributor of Pepsi–Cola products in the Superior, Wisconsin area since at least November 1999.

Defendant supplies Pepsi products to plaintiff's two Superior stores from its distribution center in Duluth. The parties coordinate in advertising and promotional programs. In order to obtain promotional discounts, plaintiff must comply with defendant's advertising, purchase volume and display requirements, which include dedicated coolers, shelf space and floor space in high traffic areas of the stores and use of defendant's promotional and advertising materials. Pepsi products represent a large fraction of plaintiff's beverage sales.

### A. *Coupon Bottle Cap Program*

From the time the two Superior stores opened to the present, the bottles of Pepsi products that defendant supplied plaintiff had "coupon bottle caps," which entitled the retail purchaser to free Pepsi products. Plaintiff has accepted the bottle caps from purchasers in exchange for Pepsi products. Defendant did not seek or obtain plaintiff's permission before implementing the bottle cap program in its stores and has not reimbursed plaintiff for the administrative costs plaintiff has incurred.

### B. *Wholesale Pricing*

From the time each of the two Superior stores opened until May 2003, plaintiff sold 20 ounce bottles of Pepsi beverages for $1.09 and defendant charged plaintiff $17.25 for each case. In early April 2003, plaintiff increased its retail price to $1.25 in response to highly competitive gasoline and cigarette pricing and increased overhead costs resulting from improvements to existing stores and construction of new ones. (The incongruity in the dates alleged is immaterial for purposes of resolving this motion.) On April 21, 2003, after plaintiff had raised its soft-drink prices, one of defendant's sales employees informed one of plaintiff's store managers that defendant had raised its wholesale price in response to plaintiff's retail price increase. Shortly thereafter, defendant sent plaintiff a letter describing defendant's "CDA" pricing program. (Plaintiff has not explained the meaning of this acronym.) The enclosed price sheet indicated that "effective April 1, 2003," the wholesale cost for each case of Pepsi products would be $19.20 if each bottle was retailed at $1.14 or higher, $17.25 if the retail price charged was between $1.00 and $1.13 and $15.60 if each bottle was sold for $.99 or less. Defendant's letter was plaintiff's first notification of this pricing program. Between November 1999 and May 2003, defendant had been selling cases of Pepsi products to some of plaintiff's competitors for $15.60.

## C. *Deterioration of the Parties' Relationship*

On May 6, 2003, plaintiff informed defendant in writing that it did not agree with the CDA program and requested credit for all payments plaintiff had made in excess of the lowest case price that defendant had charged other retailers from November 1999 through May 2003. In the letter, plaintiff also indicated that in the future, it would pay defendant only $15.60 for each case. After receiving plaintiff's letter, defendant continued to deliver Pepsi products to plaintiff's stores but charged $19.20 for each case. Between May and November 2003, plaintiff paid defendant $15.60 for each case and asked for all information on pricing programs and promotions available to defendant's dealers. Defendant never provided any additional information about pricing or promotions.

On August 22, 2003, defendant returned plaintiff's checks and demanded payment in full at the $19.20 case price. In its accompanying letter, defendant indicated that failure to make this payment in full "may result in a review of our credit terms with [plaintiff]." In a letter dated October 22, 2003, citing plaintiff's past-due invoices, defendant informed plaintiff that all future Pepsi product deliveries would be made on a cash on delivery basis. On November 6, 2003, defendant wrote to plaintiff, indicating its understanding that plaintiff no longer wanted Pepsi products distributed at its stores. Defendant stopped supplying plaintiff's stores with Pepsi products that day. The following day, plaintiff responded in writing, stating that it did want deliveries to continue, but at the lowest case price defendant offered and on full credit terms.

Some time in mid-November, 2003, plaintiff began transporting Pepsi products to its stores in Superior, from its stores in Ashland, Wisconsin, which purchased Pepsi products from North Star Beverage in Hurley, Wisconsin. Plaintiff incurred additional costs and because of the distance, was not able to transport Pepsi's full product line.

In early June 2004, plaintiff offered to pay defendant its highest case price if it would resume deliveries. For approximately two months, defendant refused, saying that it would resume delivery only if plaintiff dismissed this suit and agreed to the CDA program. Defendant agreed to resume delivery on August 23, 2004, but plaintiff had already lost sales during the peak summer tourist season.

## OPINION

A claim will not be dismissed under Fed.R.Civ.P. 12(b)(6) unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). This standard is based on the concept of notice pleading, which requires that every complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Notice pleading does not require a plaintiff to plead facts supporting each element of a cause of action. *See Sanjuan v. American Bd. of Psychiatry and Neurology,* Inc., 40 F.3d 247, 251 (7th Cir.1994) ("At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint."). However, it is possible for a plaintiff to "plead themselves out of court by alleging facts that establish a defendant's entitlement to prevail." *Bennett v. Schmidt,* 153 F.3d 516, 519 (7th Cir.1998).

### A. *Price Discrimination*

In counts one, two and three of its complaint, plaintiff alleges that the CDA pricing program violated the Robinson–Pat-

man Act, 15 U.S.C.A. § 13; Wis. Stat. § 133.04; and Wis. Admin. Code § ATCP 102.12. The relevant portion of the Robinson–Patman Act provides as follows:

> It shall be unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them ....

15 U.S.C.A. § 13. Wis. Stat. § 133.04 provides the following similar prohibition:

> No person may discriminate, either directly or indirectly, in price between different purchasers of commodities of like grade and quality, for the purpose or intent of injuring or destroying competition in any level of competition or any person engaged therein.

Finally, Wis. Admin. Code § ATCP 102.12 bars soda water beverage wholesalers from:

> Discriminat[ing], directly or indirectly, in the price at which soda water beverages are sold to customers by selling or offering to sell such beverages at a special price or discount, or with special allowances, rebates, or commissions, or under other price or credit terms or conditions not offered or made available to all customers, where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly, or otherwise injure, destroy or prevent competition between wholesalers of soda water beverages or any of their customers.

### 1. CDA Pricing Schedule

Defendant contends that plaintiff has not made out a claim under any of these provisions because the CDA pricing levels were equally available to all of its customers, including plaintiff. In response, plaintiff appears to have changed its theory, arguing that the violation arose because defendant failed to inform plaintiff of the availability of the lower prices prior to April 2003. However, plaintiff has not expressly disavowed any intent to pursue the theory that the pricing structure is itself illegal; plaintiff's allegations in its complaint suggest that this is one of its theories.

■ To the extent that plaintiff's claims are directed to the pricing structure itself, they will be dismissed. Aside from plaintiff's apparent abandonment of them, the theory is legally faulty. The cited provisions of state and federal law do not bar a distributor from ever offering lower prices or discounts; instead, they prohibit distributors from discriminating among purchasers in doing so. *FTC v. Borden Co.,* 383 U.S. 637, 646, 86 S.Ct. 1092, 16 L.Ed.2d 153 (1966) (price differential not necessarily discriminatory within meaning of Robinson–Patman Act); *Whitaker Cable Corp. v. FTC,* 239 F.2d 253, 256 (7th Cir. 1956) (price differentials not outlawed *per se*); *FLM Collision Parts, Inc. v. Ford Motor Co.,* 543 F.2d 1019, 1025–26 (2d Cir.1976) ("[T]he [Robinson–Patman] Act, as its language indicates, requires equality of treatment among purchasers, but it does not require a seller to adopt a single uniform price under all circumstances."); *Conley Pub. Group Ltd. v. Journal Communications, Inc.,* 2003 WI 119, ¶ 17, 265 Wis.2d 128, 665 N.W.2d 879 (recognizing infrequency of state law antitrust actions under chapter 133, Wisconsin courts follow federal interpretation of corresponding federal antitrust laws).

■ However, even a pricing structure that is theoretically available to all may violate the act if it is not functionally available equally. *Mueller Co. v. FTC*, 323 F.2d 44, 46 (7th Cir.1963) (citing *FTC v. Morton Salt Co.*, 334 U.S. 37, 42, 68 S.Ct. 822, 92 L.Ed. 1196 (1948)). The purpose of anti-discrimination pricing laws is to neutralize the competitive advantage a large buyer has over small buyers because of its greater purchasing power. *Morton Salt*, 334 U.S. at 43, 68 S.Ct. 822; *FTC v. Fred Meyer, Inc.*, 390 U.S. 341, 88 S.Ct. 904, 908, 19 L.Ed.2d 1222 (1968). Thus, discounts for high volume purchases may be illegal because small businesses may not be able to take advantage of such discounts even when they are theoretically available. *United Biscuit Co. v. FTC*, 350 F.2d 615, 620 (7th Cir.1965). Plaintiff contends that the lowest case price was not functionally available to it. Cpt., dkt. # 19, at 7, ¶ 47. However, the reason plaintiff alleged for needing to raise prices was that it needed revenue to make improvements in its existing stores and to construct new ones. *Id.* at 4, ¶ 22. In other words, the lowest case price is unavailable to plaintiff not because of its disproportionately small purchasing power but because of other unrelated investments plaintiff made.

(Plaintiff argues that defendant has failed to prove that the CDA pricing was generally applicable, but defendant has no burden to prove anything at this stage of the litigation. In resolving a motion to dismiss for failure to state a claim on which relief can be granted, the only issue is the sufficiency of plaintiff's allegations. Plaintiff alleged that the program was applied to its competitors, cpt., dkt. # 19, at 7, ¶ 44 (plaintiff's competitors who purchased at lowest case price sold bottles at $0.99 or less "[a]s required by the CDA program"); it did not allege that the pricing schedule was applied to it differently from the way it was applied to any other purchaser.)

When a purchaser sells bottles for $1.14 or more and pays $19.20 for each case, its profit margin is $0.34 or more for each bottle; purchasers who sell at $0.99 or less and buy each case at $15.60 make $0.34 or less for each bottle. Thus, purchasers are left with a choice between selling more bottles at a lower per bottle profit or selling fewer bottles at a higher profit for each. This is not an inequity imposed by the pricing structure but a fundamental economic conundrum faced by all sellers. By selling bottles at $1.25, plaintiff made a $0.45 profit on each bottle sold, a profit margin not available under either of the other two pricing levels. It is curious that plaintiff has instituted a lawsuit seeking to free itself from the shackles of lower profits.

## 2. *Failure to notify*

■ Although the CDA pricing structure does not violate the price discrimination statutes, defendant may have violated these acts if, as plaintiff alleged, it made the program available to plaintiff's competitors but not to plaintiff before April 2003. *Century Hardware Corp. v. Acme United Corp.*, 467 F.Supp. 350, 355–56 (E.D.Wis. 1979) (discount not practically available to all if only some purchasers were aware of its availability); *see also Mueller*, 323 F.2d at 46 (violation where there were no objective standards for discount qualification). Although plaintiff framed the count section of its complaint on the theory that the pricing structure violated the pricing discrimination statutes, it alleged that it had been paying $17.25 for each case from the opening dates of each of its two Superior stores through April 2003, that it had not been made aware that it could obtain cases for $15.60 until that time and that defendant sold cases to other retailers at the

lower price from the opening dates through April 2003. Cpt., dkt. # 19, at 3–5, ¶¶ 15, 24 and 25. This is sufficient to meet the pleading requirements of Fed. R.Civ.P. 8(a).

(Defendant argues that plaintiff cannot pursue claims under both Wis. Stat. § 133.04 and Wis. Admin. Code § ATCP 102.12. In support of this position, defendant cites the general rule of statutory construction that specific statutes prevail over more general ones. *Frostman v. State Farm Mutual Auto. Ins.*, 171 Wis.2d 138, 491 N.W.2d 100, 102 (Ct.App.1992). This rule supplies meaning when there is an arguable conflict between two statutory passages; it does not bar a plaintiff from pursuing claims under two consistent provisions.)

### B. *Dealership Termination*

The Wisconsin Fair Dealership Law provides that "[n]o grantor, directly or through any officer, agent or employee, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause." Wis. Stat. § 135.03. Even when there is good cause, the grantor of a dealership must give written notice ninety days before the termination. Wis. Stat. § 135.04. The notice must state the reason for the termination and provide a sixty-day cure period. *Id.* The Act provides dealers with a civil cause of action for damages caused by a grantor's violation. Wis. Stat. § 135.06.

■ Defendant contends that plaintiff's allegations do not show that defendant terminated the parties' relationship or that plaintiff suffered a substantial change in its competitive circumstances. Before addressing these arguments, I note that plaintiff's allegations make it unlikely that its relationship with defendant qualifies as a dealership. An agreement is a "dealership" if the grantor conveys "the right to sell or distribute goods or services, or use

a trade name, trademark, service mark, logotype, advertising or other commercial symbol." Wis. Stat. § 135.02(3)(a). The parties to a dealership must have a continuing financial interest "more significant than in the typical vendor-vendee relationship." *Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis.2d 593, 604, 407 N.W.2d 873, 879 (1987). According to its complaint, plaintiff believes that its relationship with defendant constitutes a dealership "[b]y virtue of its sales of Pepsi products in [its] [s]tores."

### 1. *Termination*

■ Turning to defendant's first argument, I think that plaintiff has failed to allege facts showing that defendant terminated the parties' relationship. Plaintiff has not alleged that defendant did so expressly, such as by telling plaintiff that it was unwilling to distribute Pepsi products to plaintiff; to the contrary, plaintiff has alleged that defendant told plaintiff that it would distribute to plaintiff so long as plaintiff accepted defendant's price schedule and agreed to C.O.D. payment terms. The Court of Appeals for the Seventh Circuit has recognized constructive termination as a viable cause of action under the Wisconsin Fair Dealer Law. In *JPM, Inc. v. John Deere Indus. Equipment Co.*, 94 F.3d 270, 272 (7th Cir.1996), for example, the court observed that "[e]conomic duress can be the basis for a constructive termination claim." *Id.* However, in order to prove economic duress, the dealer must be able to show that it was "compelled to make a disproportionate exchange of values or to give up something for nothing" with no adequate legal remedy. *Id.* (citing *Wurtz v. Fleischman*, 97 Wis.2d 100, 109–10, 293 N.W.2d 155 (1980)). Plaintiff has not alleged any other actions by defendant that could be characterized as constructive termination. Plaintiff was not compelled to give up anything under the CDA pro-

gram; it was free to choose to continue buying and selling Pepsi products at the same prices it had in the past. Plaintiff may not maintain an action for termination simply because defendant imposed certain purchasing terms that plaintiff found objectionable.

### 2. Substantial change in competitive circumstance

■ Defendant's second argument is that the CDA program does not qualify as a "substantial change in competitive circumstances" because the program was applied universally. "Even though a new policy may hurt the profitability of some dealers, the prohibition of substantial changes in competitive circumstances was not meant to prohibit nondiscriminatory system-wide changes," so long as the substantial change does not amount to a constructive termination. *East Bay Running Store, Inc. v. NIKE, Inc.*, 890 F.2d 996, 1000 (7th Cir.1989) (citing *Remus v. Amoco Oil Co.*, 794 F.2d 1238, 1240 (1986)). Plaintiff argues that this rule does not apply in this case because defendant has failed to support its assertion that the pricing schedule is generally applicable. As noted above, plaintiff alleged that the program was applied to its competitors. On a motion to dismiss for failure to state a claim, a defendant cannot submit evidence showing that a plaintiff's allegations are not accurate. It is limited to showing that, even if they are accurate and can be proven, they are legally insufficient to allow the plaintiff to prevail. (Plaintiff did not allege that the change in credit terms violates the Wisconsin Fair Dealership Act. In addition, I note that defendant's alleged failure to inform plaintiff that it could have been purchasing Pepsi products at lower prices prior to April 2003 is not an actionable "change in competitive circumstances" for the obvious reason that this alleged failure cannot be characterized as a "change.")

### C. Coupon Bottle Cap Program

■ Plaintiff contends that defendant failed to enter into a written agreement with plaintiff before implementing the coupon bottle cap program in violation of Wis. Admin. Code § ATCP 131.02. This provision states in relevant part that "[n]o promoter shall sell, offer for sale or otherwise publish or distribute any coupon without a prior contract or agreement in writing with the coupon sponsor ... [and shall set forth] [t]he amount or percentage of funds, if any, to be returned to the sponsor for the sale of coupons." Defendant argues that plaintiff failed to state a claim for damages because plaintiff did not allege that defendant failed to reimburse it for the Pepsi products that plaintiff allegedly gave to its customers but instead claims damages for its administration costs (refrigeration, shelving, record keeping, etc.).

The statutory provision anticipates that the reimbursement a sponsor (plaintiff) receives for its participation in the coupon program will be dictated by an agreement between the parties. It does not provide any specific limitations on that amount. If plaintiff can prove that it would have been able to arrange for reimbursement of administrative costs had it been given an opportunity to negotiate the formation of the contract or agreement, I see no reason why it could not recover that amount as damages. Although plaintiff faces an uphill battle in proving such a theory, its allegations are sufficient to state a claim for damages.

### ORDER

IT IS ORDERED that defendant Bernick's Pepsi–Cola of Duluth, Inc.'s Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted is GRANTED with respect to plaintiff Krist Oil Co., Inc.'s claims that

(1) Defendant's CDA pricing structure violated the Robinson–Patman Act, 15 U.S.C. § 13, Wis. Stat. § 133.04 and Wis. Admin. Code § ATCP 102.12; and

(2) Defendant violated the Wisconsin Fair Dealership Act.

FURTHER, IT IS ORDERED that defendant's motion is DENIED with respect to plaintiff's claims that

(1) Defendant failed to notify it that lower prices were available to it before April 2003, in violation of the Robinson–Patman Act, Wis. Stat. § 133.04 and Wis. Admin. Code § ATCP 102.12; and

(2) Defendant violated Wis. Admin. Code § ATCP 131.02 by failing to enter into a written agreement with plaintiff over the institution of the bottle cap coupon program.