**HOLLEB & COMPANY,**
**Plaintiff-Appellant,**

**v.**

**PRODUCE TERMINAL COLD STORAGE CO. and Beatrice Foods Co.,**
**Defendants-Appellees.**

**Nos. 75–1544, 75–1545.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1975.

Decided March 12, 1976.

Rehearing Denied April 8, 1976.

Barbara B. Hirsch, Chicago, Ill., for Holleb & Co.,

Edward L. Foote, Chicago, Ill., for Produce Terminal Cold Storage.

Before CUMMINGS and PELL, Circuit Judges, and WARREN, District Judge.*

CUMMINGS, Circuit Judge.

In this private treble damage antitrust action, plaintiff Holleb & Co. challenges the legality of the defendants' practices in the wholesale distribution of frozen foods. Plaintiff is a family corporation which has been a wholesale grocery distributor since 1919. In 1970, because of the growing popularity of frozen foods and to accommodate its customers, plaintiff decided to create a division for the wholesale distribution of frozen food to retail stores.

Defendant Produce Terminal Cold Storage Company,[1] acquired by defendant Beatrice Foods Company in 1964, is also a frozen food distributor, offering products to independent groceries, chain stores and co-operative member stores. At the time plaintiff began its frozen food operation in 1971, the competition included Produce Terminal, its sub-distributors and other large independent distributors. In addition, some of the large chain supermarkets had their own warehouses or participated in cooperative ventures. These chains generally purchased only limited quantities from independent distributors. Other large chains relied primarily on the independent distributors for their frozen food products, as did the smaller grocery stores.

After experiencing substantial losses in the first year and a half of its frozen food operations, plaintiff instituted this action. Holleb has charged that it was damaged to the extent of $500,000, before trebling, by Produce Terminal's violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and Sections 2(a), 2(d), 2(f) and 3 of the Clayton Act,[2] as amended by the Robinson-Patman Act (15 U.S.C. §§ 13(a), 13(d), 13(f) and 14). Produce Terminal counterclaimed for $500,000, before trebling,[3] based on Holleb's alleged violations of Section 2 of the Sherman Act and Sections 2(a) and 2(d) of the Clayton Act, as amended.

The case was tried to a jury. At the close of all the evidence, both sides filed motions for directed verdicts as to all claims, and the court granted defendants' motion as to Holleb's claims under Section 1 of the Sherman Act and Section 3 of the Clayton Act. In turn, defendants' counterclaims under Section 2 of the Sherman Act and Section 2(d) of the Clayton Act were eliminated. Defendants amended their prayer for damages under their remaining claim under Section 2(a) of the Clayton Act to $10,000 before trebling.

After fourteen trial days, the jury deliberated for three days with respect to the claims submitted to it and failed to reach any verdict. We are told that the jury was split 9–2 against Holleb.

Ten months thereafter, the district court filed an unreported memorandum decision holding that plaintiff Holleb had not proved any statutory violations nor that it had suffered any damage. Therefore, it granted defendants' motion pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for judgment in respect to all of plaintiff's claims. As to defendants' remaining counterclaim under Section 2(a) of the Clay-

---

* District Judge Robert W. Warren of the Eastern District of Wisconsin is sitting by designation.

1. As used in this opinion, "Produce Terminal" or "defendant" includes its parent, Beatrice Foods Company.

2. Paragraph 11 of the complaint also alleges a violation of Section 2(e) of the Clayton Act (15 U.S.C. § 13(e)), but that claim is no longer pressed.

3. While the Sherman Act counterclaim alleged actual damages of $500,000, the two Clayton Act counterclaims alleged damages of $100,000.

ton Act, the court held that any violations by Holleb were *de minimis* and therefore entered judgment in favor of plaintiff on the counterclaim. Our review of the record satisfies us that plaintiff made a *prima facie* case against defendants under Section 2(a) of the Clayton Act and therefore we reverse in part.

*Tying Arrangement*

■ Holleb charged that Produce Terminal violated Section 1 of the Sherman Act and Section 3 of the Clayton Act by conditioning its offering of frozen food companies' products for sale on their agreeing to lease cold storage space from Produce Terminal. Plaintiff characterizes this arrangement as an illegal tying agreement. We disagree. An illegal tying agreement results when the seller requires the buyer to purchase in addition to the desired product another less desired product with the potential effect that competition in the tied product would be lessened. *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545, 549. Because Produce Terminal, as a buyer, conditions its purchase of frozen foods upon the purchase, by the seller, of Produce Terminal's warehouse facilities, the arrangement is not literally a traditional tying agreement. Cf. *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495; *Advance Business Systems & Supply Co. v. SCM Corp.*, 415 F.2d 55 (4th Cir. 1969), certiorari denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101.

■ The arrangement can be recharacterized, however, to assume the literal form of a tying agreement. Produce Terminal can be viewed as selling to the frozen food producers a service, the resale of goods to retail grocers. The sale of Produce Terminal's warehouse facilities can then be seen as tied to the sale of this "product." Under this conceptualization, Section 3 of the Clayton Act is not violated because Produce Terminal is selling a service, not "goods, wares, merchandise, machinery, supplies, or other commodities * * *." 15 U.S.C. § 14; *Tri-State Broadcasting Co. v. United*

*Press International*, 369 F.2d 268 (5th Cir. 1968); *Columbia Broadcasting Co. v. Amana Refrigerator, Inc.*, 295 F.2d 375 (7th Cir. 1961), certiorari denied, 369 U.S. 812, 82 S.Ct. 689, 7 L.Ed.2d 612.

■ The arrangement also does not violate Section 1 of the Sherman Act because plaintiff has failed to prove the requisite elements of the offense. To violate that Section, the accused company must have "sufficient economic power to impose an appreciable restraint on free competition in the tied product." *Northern Pacific R. Co. v. United States, supra*, 356 U.S. at 11, 78 S.Ct. at 521, 2 L.Ed.2d at 553; *Fortner Enterprises, Inc. v. United States Steel Corp., supra*, 394 U.S. at 499, 89 S.Ct. at 1256, 22 L.Ed.2d at 502. Plaintiff has offered no evidence showing that Produce Terminal has any market power over the tying product, the ability to resell goods to grocers. *Cities Service Oil Co. v. Coleman Oil Co.*, 470 F.2d 925, 931 (1st Cir. 1972), certiorari denied, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688. Nor could the jury reasonably infer that Produce Terminal has such power either from the nature of its services, which were not unique or special (cf. *Fortner Enterprises, Inc. v. United States, supra*, 394 U.S. at 505, 89 S.Ct. at 1259, 22 L.Ed.2d at 506, or from the structure of the industry which includes other independent distributors and chain warehouses that can purchase directly from frozen food producers. The evil of a tying agreement is the restraint of competition in the tied product. *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 844 (5th Cir. 1975); *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 47 (9th Cir. 1971), certiorari denied, 405 U.S. 955, 92 S.Ct. 1173, 31 L.Ed.2d 232. Nothing in the record supports any inference that the warehousing requirement did or will reasonably have that effect.

*Monopolization*

■ The complaint also charged that Produce Terminal violated Section 2 of the Sherman Act by monopolizing and attempting to monopolize "interstate trade and commerce in the purchasing of frozen foods

for resale at wholesale within the area [defined as within Chicago and cities and counties within radius of 150 miles therefrom] and elsewhere to retail grocers" by discriminatory and predatory practices. To recover under this Section plaintiff must show specific intent and power to monopolize (*Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338, 1348 (3d Cir. 1975); *E. J. Delaney Corp. v. Bonne Bell, Inc.,* 525 F.2d 296, 305 (10th Cir. 1975); *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.,* 452 F.2d 579, 598 (7th Cir. 1971), certiorari denied, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796; *Bernard Food Industries, Inc. v. Dietene Co.,* 415 F.2d 1279, 1284 (7th Cir. 1969), certiorari denied, 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92) the relevant market defined both by geography (*Mullis v. Arco Petroleum Corp.,* 502 F.2d 290, 295 (7th Cir. 1974)) and by the product or service offered. *United States v. Grinnel Corp.,* 384 U.S. 563, 571–572, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778, 780; *E. J. Delaney Corp. v. Bonne Bell, Inc., supra,* 525 F.2d at 305.

As Judge Marshall pointed out, the only firm evidence showed that Produce Terminal served an area from 150 to 200 miles from Chicago, while Holleb proved sales only within a radius of 50 miles from Chicago. The case was submitted to the jury, with Holleb's consent, on the theory that the relevant area was 150 miles from the City of Chicago. It is therefore too late for Holleb now to claim that the City of Chicago should be considered the relevant geographic market.[4]

Even if plaintiff had properly defined a relevant market, it failed to prove that Produce Terminal had a dominant share exceeding 60% of the market. No evidence was introduced to show the sales of Produce Terminal as compared to the sales of other independents in the industry. There was insufficient data before the jury for it to conclude that Produce Terminal had the power to monopolize the relevant market. For this reason too, a Section 2 Sherman

Act case was not established. *Agrashell, Inc. v. Hammons Products Company,* 479 F.2d 269, 286 (8th Cir. 1973), certiorari denied, 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313; *L. G. Balfour Co. v. Federal Trade Commission,* 442 F.2d 1, 12 (7th Cir. 1971).

*Advertising Display Materials and Gifts*

■ Section 2(d) of the Clayton Act, as amended, prohibits sellers from paying customers anything of value for services or facilities rendered by them, unless the payments are made available "on proportionally equal terms" to all the seller's other competing customers (15 U.S.C. § 13(d)). The complaint alleges that Produce Terminal paid for advertising display materials and gifts on a discriminatory basis to certain retail grocers in violation of this provision. However, the "supporting" evidence showed only that Produce Terminal sold additional products, eggs, butter and salads, to some of its customers. Produce Terminal's decision to furnish these products, as opposed to advertising or promotional services, is not actionable under Section 2(d). *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 678 (9th Cir. 1975); *Atalanta Trading Corp. v. Federal Trade Commission,* 258 F.2d 365, 373 (2d Cir. 1958); *Chicago Spring Products Co. v. United States Steel Corp.,* 254 F.Supp. 83, 84–85 (N.D.Ill.1966), affirmed, 371 F.2d 428 (7th Cir. 1966).

*Inducement or Receipt of Discriminations in Price*

■ The complaint also alleges that Produce Terminal induced or received illegal reductions in price from frozen food companies in violation of Section 2(f) of the Clayton Act, as amended (15 U.S.C. § 13(f)). That Section makes it unlawful for a person (engaged in interstate commerce) knowingly to induce or receive a prohibited discrimination in price. With respect to this claim, the district court held that there was no evidence that Produce Terminal knowingly

---

4. In view of plaintiff's failure to show a relevant geographic market, we need not address the dispute over the relevant product market.

received illegal discriminatory prices from its suppliers within the prohibition of Section 2(f). We agree. Plaintiff contends that its exhibits show that Produce Terminal received special discounts or particularly advantageous rates on its purchases and that it received additional rebates in the form of warehouse storage charges. This evidence, however, is not sufficient to permit the jury to conclude either that these benefits were unavailable to Holleb or that Produce Terminal received the lower prices with the knowledge they were illegal. No violation of Section 2(f) was shown. *Automatic Canteen Co. v. Federal Trade Commission*, 346 U.S. 61, 73, 73 S.Ct. 1017, 1024, 97 L.Ed. 1454, 1463; *Texas Gulf Sulphur Co. v. J. R. Simplot Co.*, 418 F.2d 783, 804 (9th Cir. 1969).

*Price Discrimination*

Holleb's weightiest charge is that Produce Terminal discriminated in price between different purchasers of commodities of like grade and quality in violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act.[5] Holleb showed that Produce Terminal offered the same frozen foods for sale in yellow, white and blue catalogues. The yellow catalogue contained the highest prices; the white catalogue contained lower prices, plus 5% service charge; and the blue catalogue contained the same lower prices as the white one, but without the service charge. Produce Terminal also had five undisclosed price cells, some of them reducing prices below those in the catalogues, and certain of its customers received blue catalogue

prices with rebates ranging from 1% to 2%. On the basis of these facts, Holleb argues that Produce Terminal violated the statute.

Initially, the parties do not dispute that they are "persons engaging in commerce" within the meaning of Section 2(a). Since Holleb and Produce Terminal buy frozen foods from packers throughout the United States and resell them to retail stores in Illinois and surrounding states, primary line Robinson-Patman interstate commerce was shown. See *Moore v. Mead's Fine Bread Co.*, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145; *Bargain Car Wash, Inc. v. Standard Oil Co.*, 466 F.2d 1163, 1166 (7th Cir. 1972).

■ In an attempt to avoid liability under Section 2(a) of the Clayton Act, Produce Terminal claims that Holleb did not show that defendant made *sales* from its blue, white and yellow catalogues with price cells or with varying discounts. See *Bruce's Juices v. American Can Co.*, 330 U.S. 743, 755, 67 S.Ct. 1015, 1020, 91 L.Ed. 1219, 1221; *Loren Specialty Mfg. Co. v. Clark Mfg. Co.*, 241 F.Supp. 493, 498 (N.D.Ill.1965), affirmed, 360 F.2d 913 (7th Cir. 1966), certiorari denied, 385 U.S. 957, 87 S.Ct. 392, 17 L.Ed.2d 303. The question here is one of proof: was there sufficient evidence for the jury to conclude that sales were made out of the different catalogues? As the trial court determined, virtually every item that came out of Produce Terminal's computer had four different prices assigned to it, so that there was "a sufficient circumstantial case of [discriminatory] sale." We agree. See *Utah Pie Co. v. Continental Baking Co.*, 386 U.S. 685, 694, 87 S.Ct. 1326, 1331, 18

5. Section 2(a) provides in pertinent part:
"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such dis-

crimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided*, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: * * *"
(15 U.S.C. § 13(a)).

L.Ed.2d 406, 414. Similarly, the jury could reasonably have concluded that defendant's discriminatory sales were made in commerce. See *Mayer Paving & Asphalt Co. v. General Dynamics Corp.,* 486 F.2d 763, 766 (7th Cir. 1973), certiorari denied, 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102; *Borden Co. v. Federal Trade Commission,* 339 F.2d 953, 955 (7th Cir. 1964). The stipulation of facts showed that defendants made sales in interstate commerce based on its catalogue prices. There was sufficient evidence to support a finding that at least one discriminatory sale took place in interstate commerce. This is all plaintiff need show. *Borden Co. v. Federal Trade Commission, supra.*

Defendant also urges that Holleb has not shown that "the effect of such discrimination [by Produce Terminal] may be substantially to lessen competition or tend to create a line of monopoly in any line of commerce" within the meaning of Section 2(a) of the Clayton Act. The test is whether Holleb can show a reasonable probability of injury to competition. *Bargain Car Wash, Inc. v. Standard Oil Co., supra,* 466 F.2d at 1174; *National Dairy Products Corp. v. Federal Trade Commission,* 412 F.2d 605, 614 (7th Cir. 1969). From the evidence in the record, a jury could conclude that where Holleb and Produce Terminal were competing for the same customers and where the defendant violated the Clayton Act to obtain and retain customers, an injury to primary line competition would result. *Utah Pie Co. v. Continental Baking Co., supra,* 386 U.S. at 702–703, 87 S.Ct. at 1335, 18 L.Ed.2d at 419.

To rebut the *prima facie* showing of a Section 2(a) violation, Produce Terminal tried to justify the variety of prices and discounts by relating them to volume. However, neither cumulating sales to related stores nor averaging sales to each of such stores satisfies the cost-justification defense contained in the first proviso of Section 2(a). *United States v. Borden Company,* 370 U.S. 460, 82 S.Ct. 1309, 8 L.Ed.2d 627; *National Dairy Products Corp. v. Federal Trade Commission,* 395 F.2d 517, 525–526 (7th Cir. 1968), certiorari denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438.

■ At the trial, Produce Terminal also attempted to show that its discriminatory pricing was justified under the meeting-competition defense contained in Section 2(b) of the statute.[6] On appeal Produce Terminal has only argued that its 1½% and 2% discounts given to individual retailers were in response to its competitor Loeb's entry into the frozen food business in the late 1960's or in response to Holleb discounts (Br. 40). Even if this defense were made out with respect to those discounts, no attempt was made to justify the remaining price discriminations on this basis. Cf. *Hanson v. Pittsburgh Plate Glass Industries, Inc.,* 482 F.2d 220 (5th Cir. 1973), certiorari denied, 414 U.S. 1136, 94 S.Ct. 80, 38 L.Ed.2d 761. Further, Holleb contends that those rebates were not justified under Section 2(b). The burden of proof to establish the meeting-competition defense is on Produce Terminal. *Hampton v. Graff Vending Co.,* 478 F.2d 527, 534 (5th Cir. 1973), certiorari denied, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109; *Surprise Brassiere Co. v. Federal Trade Commission,* 406 F.2d 711, 714 (5th Cir. 1969). Because the standard is whether a reasonable and prudent business man could believe in good faith that he was cutting prices to meet those of his competition, the dispute on the evidence

---

**6.** Section 2(b) reads as follows:

"Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however,* That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor." (15 U.S.C. § 13(b))

in this case should have been decided by the jury. See *Federal Trade Commission v. A. E. Staley Mfg. Co.,* 324 U.S. 746, 759–760, 65 S.Ct. 971, 977, 89 L.Ed. 1338, 1347.

*Damages*

■ The principal underpinning of the decision below was the trial court's conclusion that plaintiff did not prove that it suffered any damage. To make out a case for the jury, Holleb must show that it was actually damaged and that the damages were the result of Produce Terminal's illegal conduct. *Perkins v. Standard Oil Co.,* 395 U.S. 642, 648, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599, 606; *Bargain Car Wash, Inc. v. Standard Oil Co., supra,* 466 F.2d at 1174.

Judge Marshall noted that Holleb's projected frozen food sales for 1972 were $960,000, with an expected loss of $49,000. However, Holleb's sales reached $1.3 million that year, but without any profits. Holleb's theory of damages was that its sales level would have reached a higher level than it did and that the jury could infer the net profit loss from the diminished sales. Alternatively, Holleb argued that the jury could award damages based on Holleb's out-of-pocket loss of $485,000 for the first three years of frozen food distribution business.

As to the $960,000 projected sales for 1972, there was testimony that this was a minimum figure if Holleb sold only to small store dry grocery accounts, whereas it intended from the start to sell frozen foods to 150 White Hen Stores, to Jewel chain stores, and other new customers. The jury could thus find that Holleb did not intend to lose money.

■ The district court also criticized Holleb's expert witness, Dr. Leon Moses, a professor of economics at Northwestern University whose background included price and market behavior. He testified that Holleb's gross sales should have been almost $3 million greater than they were over a two and one-half year period, although his testimony was criticized in the opinion below as "nothing other than sheer specula-

tion" and "of no value." In view of defendant's statutory violations, the use of projections was entirely proper. *Locklin v. Day-Glow Color Corporation,* 429 F.2d 873, 880 (7th Cir. 1970), certiorari denied, 400 U.S. 1020, 91 S.Ct. 582, 27 L.Ed.2d 632; *Rangen, Inc. v. Sterling Nelson & Sons,* 351 F.2d 851, 856 (9th Cir. 1965), certiorari denied, 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853. Furthermore, Holleb offered testimony of a certified public accountant and its financial officer in addition to financial statements and numerous business records of the parties. Thus it showed that its first and only loss in the wholesale grocery distribution occurred after its entry in the frozen food field. Being a new entrant in that market, it was unable to show a net profit analysis for the period in question. Nevertheless, its certified public accountant adequately testified how Holleb calculated its out-of-pocket losses of $485,000. From the evidence, the jury could conclude that Produce Terminal confined Holleb to low volume customers, denying it a reasonably expected growth rate. In sum, there was enough evidence for the jury to assess Holleb's damages.

■ To complete its case, plaintiff needed to show only that Produce Terminal's illegal conduct materially or substantially contributed to its injury. *Bargain Car Wash, Inc. v. Standard Oil Co., supra,* 466 F.2d at 1174; see also *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 702, 82 S.Ct. 1404, 1412, 8 L.Ed.2d 777, 785. Although the district court concluded that Holleb did not prove that it was damaged because of any of defendant's prices or conduct, there was evidence that Produce Terminal undersold Holleb when customers started to purchase from Holleb or expressed such an interest. Consequently, except for a few customers, the evidence supports an inference that Holleb was confined to small retail stores. On the basis of this inference, the jury could conclude that Holleb's damages were caused by Produce Terminal. *Perkins v. Standard Oil Co., supra,* 395 U.S. at 648, 89 S.Ct. at 1874, 23 L.Ed.2d at 606; *Continental Ore Co. v. Union Car-*

*bide & Carbon Corp., supra,* 370 U.S. at 702, 82 S.Ct. at 1412, 8 L.Ed.2d at 785.

*Counterclaim*

■ Produce Terminal's final counterclaim was for $10,000 (before trebling) based on Holleb's asserted violation of Section 2(a) of the Clayton Act.[7] The district court entered judgment in Holleb's favor on the counterclaim because the only evidence showed any violations to be *de minimis,* namely, "that Holleb on one or two occasions engaged in some pricing practices violative of Section 2(a) *· * *.*" Defendant's brief does not deny that the evidence in support of the counterclaim was damage to the business of Famous Foods, a purchaser from Produce Terminal. Although Famous Foods may have a cause of action against Holleb, defendant has no standing to recover therefor. *Billy Baxter, Inc. v. The Coca Cola Company,* 431 F.2d 183 (2d Cir. 1970), certiorari denied, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826. The fact that Holleb's catalogue pricing was lower than Produce Terminal's does not demonstrate price discrimination. *Dean Milk Co. v. Federal Trade Commission,* 395 F.2d 696, 701–702 (7th Cir. 1968).

Judgment reversed and remanded for a new trial with respect to the Section 2(a) Clayton Act claim stated in paragraph 9 of the second amended complaint; judgment affirmed in all other respects; costs to plaintiff.

---

**7.** Although Produce Terminal's original counterclaim contained an allegation of monopolization in violation of Section 2 of the Sherman Act and discriminatory payments of benefits in violation of Section 2(d) of the Clayton Act, its appellate brief stresses price discriminations (Br. 21–22, 47).