**BALDWIN COOKE COMPANY,**
Plaintiff,

v.

**KEITH CLARK, INC., Defendant.**

**No. 73 C 1244.**

United States District Court,
N. D. Illinois, E. D.

Sept. 27, 1976.

Theodore W. Anderson, Thomas E. Smith, Neuman, Williams, Anderson & Olson, Chicago, Ill., for plaintiff.

John D. Dewey, Lockwood, Dewey, Zickert & Alex, Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

This is the damage aftermath of our decision of June 12, 1974 finding defendant, Keith Clark, Inc., guilty of infringing plaintiff Baldwin Cooke Company's valid copyrights on its work entitled THE EXECUTIVE PLANNER, a combined diary, appointment calendar and information book. *Baldwin Cooke Company v. Keith Clark, Inc.*, 383 F.Supp. 650 (N.D.Ill.1974), *aff'd* 505 F.2d 1250 (7th Cir. 1974).

Plaintiff seeks recovery of defendant's profits, damages for lost income during the years of infringement, damages for lost future income from 1975 to 1982, damages to its good will, attorneys' fees and pre- and postjudgment interest. The following memorandum will stand as our findings and conclusions under Rule 52(a) of the Federal Rules of Civil Procedure.

Plaintiff contends that defendant is liable for both its profit made due to the infringement and any damage proximately caused plaintiff by the infringement. The controlling statutory provision is found in 17 U.S.C. § 101(b) which provides in material part that the person found guilty of copyright infringement may be ordered,

"To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits, such damages as to the court shall appear to be just  .  .  .  ."

Defendant disputes that plaintiff is entitled to both defendant's profit and plaintiff's damages. We have concluded that the Supreme Court's decision in *F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952), and the decision in this district in *Gelles-Widmar Co. v. Milton Bradley Co.*, 132 U.S.P.Q. 30 (N.D.Ill.1961), *affirmed* 313 F.2d 143 (7th Cir. 1963), resolve the matter in favor of plaintiff. *See also, Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.*, 329 F.2d 194, 196 (2d Cir. 1964).

In the *Woolworth* case plaintiff was the owner of a copyright on a statuary work. Defendant purchased a number of the stat-

uettes from a third party and distributed them through its stores without knowledge of plaintiff's copyright. The lower courts found that plaintiff's copyright was valid and infringed and awarded statutory "in lieu" damages of $5,000 and attorneys' fees. On certiorari the Supreme Court concluded that there had been an adequate showing of profit made by the infringer, Woolworth, to enable assessment of that liability. "As to the other ingredient in computing liability, damages suffered by the copyright proprietor, the record is inadequate to establish an actually sustained amount." 344 U.S. at 230, 73 S.Ct. at 224. Nonetheless it approved in lieu damages of $5,000 because recovery under the Copyright Act may be cumulative. Thus the Court stated:

"Moreover, a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." 344 U.S. at 233, 73 S.Ct. at 225.

In *Gelles-Widmar,* the district court concluded:

"Defendants will be required to pay to plaintiff such damages as plaintiff has sustained in consequence of defendants' infringement of plaintiff's copyrights and to account and pay over to plaintiff all of the gains, profits, advantages derived by defendants from their infringement of plaintiff's copyrights. Plaintiff is entitled to a separate accounting to determine and assess the amounts of such damages and profits in accordance with the provisions of the copyright laws governing such relief." 132 U.S.P.Q. at 35.

The decision of the district court was affirmed by the Court of Appeals for this circuit. 313 F.2d 143 (7th Cir. 1963).

### Defendant's Profits

■ The parties have stipulated that during the years of infringement, 1972, 1973 and 1974, defendant's gross sales of its infringing EXECUTIVE WEEKLY MINDER were $266,239.03. Plaintiff has also stipulated that the costs of labor, material and direct overhead for the manufacture of the infringing books was $188,058.54. Plaintiff contends that it is entitled to recover $78,181.29 upon the ground that defendant has failed to meet its statutory burden of proving "every element of cost which [it] claims . . ." 17 U.S.C. § 101(b).

Defendant contends that it is entitled to allocate or pro rate its general administrative expense and overhead by a formula which would serve to reduce its gross profit on sales of the infringing books to a net profit of some $19,000. In this regard it is supported by its expert witness McHugh that commonly accepted accounting principles require an allocation of administrative expenses and general overhead. Defendant did not adduce, however, any evidence of an increase in its administrative expenses and general overhead. Defendant is a multiproduct business. Its infringing activities represented 1% of its total sales.

For its part, plaintiff called the witness Calvin as its accounting expert. His credentials were every bit as impressive as McHugh's. Mr. Calvin expressed the opinion that generally accepted accounting principles would preclude the allocation of administrative expenses and general overhead, absent a showing that they had in fact increased in some degree.

Had defendant made some showing of increase in its administrative expenses and general overhead resulting from its manufacture of the infringing books, allocation rather than precision would be acceptable. But there is no evidence of any increase in those areas and consequently, defendant has failed "to prove every element of cost which [it] claims . . ." 17 U.S.C. § 101(b).

Accordingly, plaintiff is entitled to recover as defendant's profits, the sum of $78,181.29.

*Plaintiff's Damages*

As previously noted, plaintiff claims damages for lost sales during the period of infringement, lost future sales and damage to good will. They will be discussed seriatim.

*Lost Sales During Period of Infringement*

Unlike defendant, plaintiff is a single product business. During the period of time that it first distributed and then manufactured and distributed the EXECUTIVE PLANNER, plaintiff has kept meticulous records with respect to its sales per customer, repeat sales, discontinued sales, lost customers, etc., on the basis of these records, plaintiff's expert Blattberg testified that in his opinion, virtually all of defendant's sales were sales lost by plaintiff, i. e., but for defendant's infringement, plaintiff would have sold an additional 118,892 copies of its EXECUTIVE PLANNER, that being the number of copies defendant sold of its infringing EXECUTIVE WEEKLY MINDER.

■ We recognize that in cases of this kind lost sales and their resultant lost profit may be based upon "opinion and probable estimate." *Story Parchment Co. v. Paterson Co.,* 282 U.S. 555, 565, 51 S.Ct. 248, 75 L.Ed. 544 (1931). See also, *Holleb & Co. v. Produce Terminal Cold Storage Co.,* 532 F.2d 29, 36 (7th Cir. 1976); *cf. Alover Distributors, Inc. v. Kroger Co.,* 513 F.2d 1137 (7th Cir. 1975). But a finding that defendant has unlawfully taken sales from the plaintiff must be based upon something other than conjecture.

■ There is no evidence of the probability that plaintiff would acquire a particular new customer, i. e., one to whom it had not previously sold. There is evidence, however, of the probability that an old customer who had discontinued buying from plaintiff would not return. According to plaintiff's witness Nickel, only 10% of the customers who had departed plaintiff for one year returned, only 4% of those who had departed for two years, and only 2% of those who had departed for three years. As a consequence, we have concluded that the only sales made by defendant which we could reasonably infer would have been made by plaintiff but for defendant's infringement are those who were purchasing from plaintiff either in the year immediately preceding defendant's sales, or simultaneous with defendant's sales. These customers comprise subcategories 1A, 2D, 2A, 1C, 2C and 1B of the witness Blattberg's analysis, and the sales to them total 53,302 or 44.9% of defendant's sales and not all 118,892 copies sold by defendant. Applying plaintiff's experienced margin of profit, Blattberg concluded that plaintiff's lost income during the years of infringement was $325,000. Applying the percentage ratio that we have arrived at in the preceding portion of this paragraph, we conclude that plaintiff's compensable lost profit was $145,925.

■ Defendant urges that plaintiff must allocate to and deduct from this profit figure additional administrative expense and overhead. In this regard its position and that of its expert are identical to the position it took as to its own profits. Correspondingly, plaintiff's expert rejects the allocation because the evidence showed that plaintiff would not have incurred additional administrative expenses and overhead. Plaintiff's witnesses who have been in the business for many years, testified credibly and unequivocally that save for a $2 per order handling expense, plaintiff would not have incurred additional overhead and administrative expense in regard to these additional sales. We think the circumstances in the case corroborate that position. During the years of infringement, plaintiff sold in excess of 1,850,000 EXECUTIVE PLANNERs. It is a fair conclusion that plaintiff had reached the point in its production where its gross profit on each unit sold was its net profit. Accordingly, we conclude that plaintiff is entitled to recover from defendant as plaintiff's lost profit during the years of infringement, the amount of $145,925.

### Plaintiff's Lost Future Sales

██ Insofar as plaintiff's lost future sales are concerned, its expert Blattberg inferred first that plaintiff would have made the sales taken away by defendant through its infringement, and then inferred that those sales would repeat for plaintiff in accord with plaintiff's repeat sales history. While we have no doubt as to the credibility of plaintiff's sale records, we cannot ascribe to them the force that plaintiff does. Plaintiff is engaged in the sale of a sales promotion or good will gift item. Fashions change and so, too, does this type of business gift giving. While intentional commercial infringers such as defendant should be sternly brought to book and made to pay for their depredations, damages cannot be assessed on the basis of speculation. In respect to future sales, we find that plaintiff has failed to sustain its burden and accordingly is not entitled to any damages in that regard.

### Damage to Plaintiff's Good Will

The only evidence in respect to this item was plaintiff's witness Nickel's testimony that, in his opinion, plaintiff's good will had been damaged $300,000. He likened plaintiff's situation to that of the manufacturers of Zippo lighters once the imitation Zippo hit the market.

██ We recognize, as plaintiff urges, that a layman is entitled to express an opinion as to the value of his (or his employer's) property and damage inflicted on the property. But in light of plaintiff's sales history during the period of infringement (increases of 9,000 orders one year and 4,000 the next and increases of 1,500 new orders one and 1,000 the next) we cannot find that plaintiff has suffered any compensable injury to its good will. Accordingly, it will be denied damages in that regard.

### Plaintiff's Attorneys' Fees

Under the copyright statute, the successful plaintiff is entitled to recover all of its costs and, in the discretion of the court, reasonable attorneys' fees. 17 U.S.C. § 116.[1]

It is stipulated that plaintiff has paid $28,897.30 as costs and attorneys' fees for the prosecution in this court of its claim of infringement, and the defendant's subsequent appeal to the court of appeals of this circuit. The evidence is that subsequent to the affirmance by the court of appeals, plaintiff paid $31,514.67 as costs and fees through November 30, 1975; $2,674.42 during December, 1975, and $15,900 during the current year. All of the fees and costs since affirmance have been incurred in connection with plaintiff's prosecution of its pending claim for defendant's profits and plaintiff's damages. Thus to date, plaintiff has incurred costs and attorneys' fees of $78,986.39 in connection with the totality of the action.

Defendant does not challenge either the time expended by plaintiff's counsel or the reasonableness of their hourly charge. Defendant's entire defense to the question of attorneys' fees is that those incurred since affirmance were unnecessary because of defendant's $19,000 offer of judgment made under Rule 68, Fed.R.Civ.P. which defendant asserts plaintiff unreasonably rejected.

Defendant's offer of judgment was predicated upon its theory that plaintiff is not entitled to a cumulative award under § 101(b) and its theory of allocation of administrative expense and general overhead. We have, of course, rejected both of those theories.

██ We have awarded plaintiff $224,106.29 as defendant's profits and plaintiff's damages. This is a sum in excess of $205,000 more than defendant's offer of judgment. The attorneys' fees and costs incurred by plaintiff in connection with this

---

1. Section 116 provides:

   *Costs; attorney's fees*

   In all actions, suits, or proceedings under this title, except when brought by or against the United States or any officer thereof, full costs shall be allowed, and the court may award to the prevailing party a reasonable attorney's fee as part of the costs.

profit-damage aspect of the case approximate $50,000 or 25% of the amount plaintiff has recovered over and above defendant's offer. Such a fee relates reasonably to the result achieved.

Counsel who have appeared for plaintiff are lawyers of ability, integrity and diligence. Through their efforts (as well as the efforts of defendant's counsel) the trial on the issue of infringement was conducted on a stipulated record. Through their efforts (as well as the efforts of defendant's counsel) much of the evidence with respect to profits and damages was stipulated to the end that only three days of court time were consumed in that hearing.

Our original opinion and decree held that plaintiff was entitled to recover costs including attorneys' fees and the court of appeals in affirming awarded plaintiff attorneys' fees to be set by this court.

Finally, there is the question of defendant's deliberateness or wilfulness in committing the infringement. *Gelles-Widmar Co., supra,* and *Florence Art Co., Inc. v. Quartite Creative Corp.,* 158 U.S.P.Q. 382 (N.D.Ill.1968), recognize that an award of attorneys' fees is most appropriate in those cases in which a defendant has engaged in patent, flagrant, intentional infringement. The evidence on the merits and the evidence during this hearing indicate beyond any question that plaintiff's work was copied for the purpose of enabling defendant to offer the public a substitute for plaintiff's work. Although we have found no damage to plaintiff's good will, the evidence is clear that defendant and its jobbers wished to trade on plaintiff's efforts.

Defendant and its counsel urge that defendant's conduct was in good faith, always conducted under the guidance and advice of counsel. Accepting those protestations as true, plaintiff should not suffer because of defendant's counsel's erroneous advice.

Accordingly we have concluded that plaintiff is entitled to an award of costs and attorneys' fees in accord with the statute in the full amount claimed, $78,986.39.

### Prejudgment and Postjudgment Interest

Plaintiff claims that it is entitled to postjudgment interest and that we believe follows from the entry of judgment under 28 U.S.C. § 1961.

In addition, however, plaintiff claims that defendant's conduct here has been sufficiently flagrant and dilatory as to entitle plaintiff to an award of prejudgment interest. Plaintiff concedes that the Copyright Act, unlike the Patent Act (35 U.S.C. § 284), does not authorize prejudgment interest. Rather the Copyright Act, as we have seen, provides for an award of costs and a discretionary award of attorneys' fees in addition to the profits and damages authorized by Section 101(b).

We have concluded that even in a case of flagrant infringement such as that presented here, the cumulative award of defendant's profits and plaintiff's damages is sufficiently severe as to deter others from like conduct without the need for an award of prejudgment interest. Plaintiff recognizes that its request is addressed to our discretion. While we do not regard the request by any means as highhanded, we are not disposed in the circumstances here to grant it. Accordingly, plaintiff will be denied prejudgment interest.

In summary, then, plaintiff will recover defendant's profits, plaintiff's damages and plaintiff's attorneys' fees all as herein described and accordingly, a judgment will enter in favor of the plaintiff, Baldwin Cooke Company, and against the defendant, Keith Clark, Inc., in the amount of $303,-092.68 with interest from the date hereof.