## CENTURY HARDWARE CORPORATION, Plaintiff,

v.

## ACME UNITED CORPORATION, Defendant.

### No. 77–C–316.

United States District Court,
E. D. Wisconsin.

Feb. 28, 1979.

---

Michael, Best & Friedrich by David J. Cannon, Milwaukee, Wis., for plaintiff.

Foley & Lardner by Robert Christensen, Michael A. Bowen, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

A bench trial was held in this action on January 11, 1979. The matter is before me for the resolution of the merits on the basis of certain stipulated facts, the evidence adduced at trial and the parties' briefs. The following decision constitutes my findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

This is an action under the Robinson-Patman Act, 15 U.S.C. § 13, charging unlawful price discrimination, and under the Wisconsin Fair Dealership Law, Chapter 135, Wis. Stats., alleging an improper termination of a dealership agreement between the parties. The plaintiff seeks damages and equitable relief in connection with both causes of action. Jurisdiction over the Robinson-Patman claim is conferred by 28 U.S.C. § 1337 and 15 U.S.C. §§ 15, 22 and 26. Jurisdiction over the Wisconsin Fair Dealership Law claim is conferred by 28 U.S.C. § 1332, there being diversity of citizenship and allegations of the requisite amount in controversy, and under the doctrine of pendent jurisdiction.

The plaintiff is a Wisconsin corporation with its offices and principal place of business in Milwaukee, Wisconsin. It is engaged in the wholesale hardware business.

The defendant is a corporation with its principal place of business in Connecticut. The defendant manufactures scissors and sells them to the plaintiff and others in Wisconsin, who resell them to schools, school boards and other customers.

For a period of over 20 years, the defendant has maintained a customer classification called "distributor of school supplies." (Hereinafter "distributors"). Distributors specialize in selling arts and crafts supplies

to schools. Such distributors are entitled to receive a 5% discount or promotional allowance off the regular jobber's prices when they purchase certain school supplies. It is agreed that the 5% discount gives distributors a competitive advantage over other customers who purchase the defendant's products at the regular jobbers' prices.

The specific products in question are scissors and shears used by schools. At all pertinent times, there were six designated distributors in the relevant market, Wisconsin and Upper Michigan. The plaintiff was not one of them. The two major distributors by volume, Sax Arts & Crafts and Valley Schools Suppliers, Inc., had been receiving the 5% discount for at least 20 years prior to 1977 based on an oral agreement with the defendant.

The plaintiff sells a large range of hardware items. It does a substantial amount of business with schools throughout the state of Wisconsin. In addition to scissors, items sold to schools by the plaintiff vary from plumbing supplies to shop tools; in the words of Mr. Gendelman, the plaintiff's president, it sells "anything and everything" needed by schools. The plaintiff's business with the Milwaukee schools alone involves over 1,000 bids a year and amounts to nearly $250,000 per year.

Although the plaintiff has sold the defendant's products for several years, no consideration was given by the defendant as to whether the plaintiff should be designated as a distributor and thus become eligible for the 5% discount until November, 1976. At that time, Mr. Gendelman telephoned Mr. Farrington, the defendant's vice president of marketing, and informed him that the plaintiff was being underbid by competitors for sales of scissors to schools. Mr. Farrington stated that this was probably because the plaintiff was not a distributor of school supplies. Mr. Gendelman argued that the plaintiff should be considered a distributor of school supplies, and Mr. Farrington stated that he would investigate the plaintiff's eligibility for that status.

Mr. Farrington testified that as a result of Mr. Gendelman's phone call, the defendant reevaluated its discount system and decided to substitute written agreements with its distributors for the existing oral agreements. On or about January 1, 1977, the defendant circulated to the six designated distributors who had been receiving the 5% discount a letter announcing the 5% promotional allowance on certain school supply items for school-line distributors. A form agreement entitled "agreement to provide promotional services" was enclosed. Neither the letter nor an agreement was sent to the plaintiff, and the requirements for eligibility for distributor status were not explained nor offered to the plaintiff until February 11, 1977, when Mr. Farrington wrote to Mr. Gendelman informing him why the defendant did not consider the plaintiff a distributor of school supplies. A copy of the new standard agreement used for distributors was enclosed.

On April 11, 1977, Mr. Gendelman executed the agreement to provide promotional services and returned it to the defendant the following day. Although the agreement recites on its face that "A copy of our latest catalog is submitted herewith," no catalog was submitted by the plaintiff.

On April 26, 1977, Mr. Farrington wrote to the plaintiff and informed it that it was not eligible for classification as a distributor because it failed to submit a copy of its latest catalog and because there was no evidence that the plaintiff was maintaining a stock of school supplies manufactured by the defendant.

*Wisconsin Fair Dealership Law*

The plaintiff attempted to show that the defendant violated the Wisconsin Fair Dealership Law, Chapter 135, Wis.Stats., by cancelling what it claims to be an "agreement" whereby the plaintiff would be a distributor of the defendant's school supplies and entitled to the 5% discount.

Section 135.03 provides that a grantor of a dealership may not terminate the dealership agreement without good cause, and section 135.04 requires notice of a termination to be given in a specified manner. Section 135.06 allows an action for damages and injunctive relief for violations of the Act.

The plaintiff argues that the written agreement form executed by its president on April 11, 1978, was a binding contract which could only be terminated in compliance with the provisions of Chapter 135.

In my opinion, the plaintiff has failed to prove a violation of the Act because it did not establish that a dealership agreement was ever entered into by the parties. The agreement form prepared by the defendant and signed by Mr. Gendelman states that "the undersigned, a distributor of school supplies, in consideration of a promotional allowance to be given by Acme United Corporation, hereby agrees to provide the following services on behalf of Acme United Corporation: . . . The publication and distribution of a Catalog of School Supplies . . . A copy of our latest catalog is submitted herewith." It is undisputed that the plaintiff never provided a copy of such a catalog as required. It is elementary contract law that an acceptance is not effective unless the offeree accepts in the manner prescribed by the offeror. *Nelson, Inc. v. City of Milwaukee Sewerage Commission,* 72 Wis.2d 400, 419, 241 N.W.2d 390 (1976). The terms of acceptance were specified in the form agreement prepared by the defendant. They were not complied with by the plaintiff, and therefore no contract was formed. Consequently, the Wisconsin Fair Dealership Law claim must fail.

### Robinson-Patman Act Claims

The Plaintiff contends that the discount is either an illegal price discrimination under 15 U.S.C. § 13(a), for which there is no cost justification, or an illegal promotional allowance under 15 U.S.C. § 13(d), or both. I believe that the case comes within the ambit of § 13(a) but not within § 13(d). The former section covers price discrimination such as discounts; the latter section covers payments by the seller to the buyer in consideration of services or facilities provided by the buyer. See *Chicago Spring Products Co. v. U. S. Steel Corp.,* 254 F.Supp. 83, 84–85, affirmed, 371 F.2d 428 (7th Cir. 1966). This case involves a price discount, although it is denominated a "promotional allowance," and therefore the case will be considered only under § 13(a).

The defendant does not dispute that several of the jurisdictional elements of a § 13(a) claim are present: the defendant is a "person" covered by the Act; the alleged discrimination is attributable to the same seller in its dealings with different purchasers; the scissors in question are "commodities of like grade and quality"; and the alleged discrimination involves interstate commerce. See, 3 Von Kalinowski, Antitrust Law and Trade Regulation, § 23.-02[1]. The plaintiff also has met the contemporaneous-sales jurisdictional requirement. The uncontested facts reveal that the plaintiff was successful in receiving orders from schools in 1974 and 1975 at a time when the defendant was selling scissors to the designated distributors of school supplies at the discounted price. For purposes of proving its prima facie case, these contemporaneous sales at different prices are sufficient. The sales at different prices need only be reasonably contemporaneous. *Loren Specialty Mfg. Co. v. Clark Mfg. Co.,* 241 F.Supp. 493, 498 (N.D.Ill.1965), affirmed 360 F.2d 913 (7th Cir.), cert. denied 385 U.S. 957, 87 S.Ct. 392, 17 L.Ed.2d 303 (1966).

The central issue in this case is whether there has been a substantive violation of the Robinson-Patman Act. That is, has there been a discrimination in price? The defendant argues that its price discount is functionally available to all purchasers who choose to qualify as distributors, and therefore the discount is not prohibited by the Act. *FLM Collision Parts, Inc. v. Ford Motor Co.,* 543 F.2d 1019, 1025 (2d Cir. 1976); *Chapman v. Rudd Paint and Varnish Co.,* 409 F.2d 635 (9th Cir. 1969); *Mueller v. F.T.C.,* 323 F.2d 44 (7th Cir. 1963), cert. denied, 377 U.S. 923, 84 S.Ct. 1219, 12 L.Ed.2d 215 (1964). The plaintiff argues that the discount is not functionally available to all purchasers and was not available to Century Hardware in this case.

In *Mueller Co.,* supra, the petitioner-seller of parts for water and gas distribution systems sold some of its products through two classes of jobbers: "stocking jobbers" and "regular jobbers." Both classes of jobbers received a 15% discount in direct shipments to end users. The "stocking jobbers" re-

ceived an additional 10% discount on the stock they warehoused. The FTC charged that the additional 10% discount on the petitioner's products was an illegal price discrimination, and after the commission found a violation of § 13(a), a cease and desist order was issued. Mueller Co. had argued that regular jobbers were free to enter the stocking jobber status, but the commission found to the contrary. Affirming, the court of appeals for the seventh circuit reasoned:

> "There were no objective standards to guide regular jobbers in qualifying as acceptable and there is substantial evidence to support the Commission's finding as well as evidence that petitioner's decisions on this point were influenced by whether it had already adequate distribution 'in that particular area' and by its concern to protect 'old established jobbers.' Theoretically, these discounts were available to all, but functionally they were not. *Federal Trade Comm. v. Morton Salt Co.*, 334 U.S. 37, 42, 68 S.Ct. 822, 92 L.Ed. 1196 (1948)." 323 F.2d at 46.

Under *Mueller Co.*, therefore, a discount is functionally available when objective standards exist to guide regular jobbers in qualifying for the category of purchasers receiving the discount.

The defendant argues that the plaintiff "never was, is not, and probably never will be a 'school distributor' as defendant uses that term." The defendant stresses the fact that the plaintiff's business—wholesaling hardware products—is qualitatively different from that of the designated distributors of school supplies because the plaintiff carries a large selection of products, most of which are unrelated to arts and crafts needs. Also, the plaintiff fails to carry many of the items carried by the distributors. A comparison of the plaintiff's catalog with those of the distributors demonstrates this difference. The defendant also showed that the plaintiff does not belong to the same trade associations and does not attend the same trade conventions as the distributors.

While these differences were satisfactorily proved, I find them to be irrelevant. The defendant never suggested to its customers that in order to qualify as a distributor, a dealer had to belong to particular trade associations, to attend conventions, or to specialize *only* in arts and crafts supplies for schools. These contingencies were not shown to be part of the oral understanding between the defendant and its distributors, and they certainly were not specified in the standard agreement to provide promotional services which the defendant began using in 1977.

The standard agreement listed three requirements for distributors: (1) the maintenance of a stock of school supplies and equipment manufactured by the defendant throughout the year; (2) the publication and distribution of a catalog of school supplies featuring the defendant's school supplies on at least a biennial basis, and (3) sales personnel to promote the defendant's products through personal contact with purchasers. Facially, these requirements constitute objective standards which provide sufficient guidance to a dealer seeking to become a school supplies distributor.

Nevertheless, the defendant did not inform the plaintiff of these requirements until February 11, 1977. In fact, the plaintiff was completely unaware of the price discount which his competitors had been receiving until November, 1976, when Mr. Farrington so informed Mr. Gendelman. The defendant candidly concedes that in actions under § 13(d) of the Act, courts have held that the seller must take affirmative action to inform customers of the availability of promotional payments and services. *Alterman Foods, Inc. v. F.T.C.*, 497 F.2d 993, 1001 (5th Cir. 1974); *Fred Meyer, Inc. v. F.T.C.*, 359 F.2d 351, 360 n. 10 (9th Cir. 1966), rev'd in part on other grounds, 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968). The defendant argues that this requirement cannot be uncritically injected into actions under § 13(a), but it fails to suggest any meaningful reason why such a notification requirement should not be applied in this case. No matter how facially objective the defendant's requirements for distributor status are, if only some purchasers are aware of their existence, it cannot

be said that the distributor status and price discount are practically available to all.

■ The defendant may not be required to offer its price discount to a customer it knows will be uninterested or who will be unwilling to comply with its requirements for distributor. However, the defendant knew that the plaintiff was competing with its distributors for sales of scissors to schools and that it would be interested in receiving a price discount its competitors were receiving. Under the circumstances, I believe the defendant engaged in price discrimination in its sales of scissors.

■ Having established that the defendant engaged in price discrimination, the plaintiff must also show that the effect of the price discrimination "may be substantially to lessen competition . . . or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them." 15 U.S.C. § 13(a). The defendant argues that the plaintiff is not in competition with the distributors since they operate at different functional levels. The defendant contends that the distributors operate at the retail level and that the plaintiff is a wholesale operation that performs none of the functions of a school supplies distributor.

I disagree. With respect to sales to schools, the plaintiff operates at the same level of distribution as do the distributors of school supplies. The character of the plaintiff's selling is no different from the character of the distributors' selling—indeed, they bid for the same sales contracts to schools. *Kirby v. P. R. Malloy Co., Inc.*, 489 F.2d 904, 909 (7th Cir. 1973). The plaintiff has established that it competes with the favored purchasers.

■ I also find that the price discrimination has an adverse effect on competition and that the plaintiff has been damaged thereby. One of the stipulated facts is that the discount gives the recipient a competitive advantage in sales of scissors to schools. The fact that the plaintiff has been underbid by the favored distributors since 1976 supports this finding of adverse effect on competition.

The defendant contends that even if price discrimination is found, it has a complete defense because the price discount is cost-justified within the meaning of the first proviso of § 13(a). Such proviso states, in part, that price differentials which make due allowance for differences in the cost of sale or delivery resulting from different methods by which the commodities are sold or delivered to buyers, are not prohibited.

■ The defendant concedes that the burden of proving this cost-justification defense is on the defendant-seller. In my opinion, the defendant's proof on this point was inadequate. No cost analysis was introduced to demonstrate the actual savings, if any, resulting from the discount. The requirements set forth in the standard agreement in order to qualify as a distributor obligated the distributors to perform functions which would surely result in some savings to the defendant since it will not have to undertake these functions itself. However, this is not a substitute for specific evidence of cost savings. The defendant points to no such evidence in the record. For these reasons, I believe that the defendant has not established a cost-justification defense.

The plaintiff claims that it has been injured as a result of the defendant's unlawful conduct and is entitled to damages of two general types: (1) the difference between the discount and regular price for its sales to the Milwaukee public school district, and (2) lost profits on "anticipated sales" it would have made to the Milwaukee public schools had it received the discount. The plaintiff has not attempted to prove damages flowing from sales to other schools.

■ The defendant challenges the plaintiff's right to recover the first of the two types of damages set forth above on the basis that the price differential is not the proper measure of damages in a Robinson-Patman case. The courts are divided on the question whether the amount of a discrimination in prices between business competitors can be recovered as damages. Compare *Elizabeth Arden Sales Corporation v. Gus Blass Co.*, 150 F.2d 988 (8th Cir.), cert.

denied 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467 (1945), with *Enterprise Industries, Inc. v. Texas Co.,* 240 F.2d 457 (2d Cir.), cert. denied 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957). See also *Fowler Manufacturing Co. v. Gorlick,* 415 F.2d 1248 (9th Cir. 1969). From these cases, however, it appears that if the buyer is unable to pass on the higher price to its own customer, the price differential is a proper measure of damages.

I believe that in a case in which competing purchasers seek to resell the commodity in question through a bid-award procedure, the winner being the lowest bidder, it is probable that there is little or no opportunity for the winning bidder to pass on the higher price. An attempt to pass on the higher price necessarily raises the bid and increases the chance that a competitor's bid will be lower. Accordingly, I believe that the price differential is an appropriate measure of damages in this case. In the years 1974–1976, the plaintiff purchased $6,732.54 worth of school scissors for which it should have received the 5% discount. The price differential on these purchases, therefore, is $336.63.

■ The second type of damages sought by the plaintiff—lost profits on anticipated sales for the years 1974–1978—are not recoverable. Because of the nature of the bid-award sale procedure through which the plaintiff and its competitors sold to the Milwaukee schools, a bidder who does not win the contract award in question does not make a purchase since it has no order to fill. The Robinson-Patman Act prohibits two sales of the same product to different purchasers at different prices. *Holleb & Co. v. Produce Terminal Cold Storage Co.,* 532 F.2d 29, 34–35 (7th Cir. 1976). "[N]o single sale can violate the Robinson-Patman Act. At least two transactions must take place in order to constitute a discrimination." *Bruce's Juices v. American Can Co.,* 330 U.S. 743, 755, 67 S.Ct. 1015, 1021, 91 L.Ed. 1219 (1947). One who merely seeks to purchase does not qualify as a purchaser. *Chicago Seating Co. v. S. Karpen & Bros.,* 177 F.2d 863 (7th Cir. 1949). For this reason, the plaintiff is not entitled to damages for lost sales.

Thus, the only damages the plaintiff may recover are the $336.63, representing the price differential. Such amount trebled pursuant to 15 U.S.C. § 15, yields a total damage award of $1,009.89.

■ The plaintiff has also requested injunctive relief restraining the defendant from discriminating against the plaintiff and in favor of the distributors. I am not convinced that there is a significant threat of injury from a violation that is likely to continue or reoccur. The plaintiff now knows what the requirements are for attaining the status of distributor and can receive the discount if it meets those requirements. Under the circumstances, I do not believe that an injunction is warranted.

■ The plaintiff, having succeeded in proving its antitrust claim, is entitled to an award of attorney's fees as part of its costs. 15 U.S.C. § 15. However, in view of the modest actual damages established by the plaintiff and the absence of any special complexity in the case, attorney's fees in the sum of only $250 will be awarded to the plaintiff. *In re Clark Oil & Refining Corp. Antitrust Litigation,* 422 F.Supp. 503 (E.D. Wis.1976).

Therefore, IT IS ORDERED that judgment be entered in favor of the plaintiff in the amount of $1,009.89, with costs, including attorney's fees of $250.